## Swift's Appeal.   Giffin's Estate.

A testatrix gave the residue of her estate to her two sisters, after certain specific devises and general legacies, and authorized and empowered her executors to sell all of her estate, real, personal and mixed wheresoever found. After the payment of the debts and legacies there was a large surplus of cash in the hands of the executors and considerable real estate unsold. *Held*, that the executors having sold all that was necessary to carry out the provisions of the will, the power of sale conferred upon them was exhausted.

November 4th 1878.   Before AGNEW, C. J., MERCUR, GORDON and TRUNKEY, JJ.   SHARSWOOD, PAXSON and WOODWARD, JJ., absent.

Appeal from the Orphans' Court of *Allegheny county :* Of October and November Term 1877, No. 249.

Appeal of Rèv. E. P. Swift from the decree of the court dismissing his petition praying for a citation to the executors of the will of Margaret Giffin, deceased, to show cause why an order should not issue for a sale of the residuary estate of said decedent, including lands unsold.   Margaret Giffin died April 1st 1872, leaving a son and two daughters, Susan, the wife of Dr. Rankin, and Emily, the wife of Rev. E. P. Swift.

By her last will Mrs. Giffin directed her executors to expend what was necessary in repairing a cemetery lot, in erecting a monument, in repairs, &c., and then made certain bequests to persons named amounting to $55,000.   The residue she divided share and share alike between her two daughters and their heirs, and then made the following provision :

"Ninth. All that remains of my estate after paying the aforementioned bequests, with the debts and charges, I give and bequeath to my daughters, Emily Giffin and Louisa Rankin (or their respective heirs), to be equally divided between them, share and share alike ; and in order to enable my executors, hereinafter named, to carry out the requirements of my hereinbefore recited will, I do hereby authorize and empower them, or the survivors or survivor of them, as soon after my decease as it can be done to advantage, to sell at public or private sale, as they may deem best for the

interest of my estate, all my goods and estate, real, personal or mixed, wherever found, not heretofore disposed of, including the coal under the farm I now occupy (except the three acres reserved) ; also the lots on Mount Washington, and to pay the bequests hereinbefore made (without interest), as they have money on hand to do so, in the order in which they are herein given."

In a codicil she further provided:—

" I authorize and direct my executors to pay my daughter, Mrs. Louisa Rankin, out of any money belonging to my estate that shall come into their hands, the sum of $5000, in such amounts as she shall need from time to time, and to charge the same to her on account of her share of the final distribution, and anything in my said will that conflicts with this codicil, in so far as it conflicts, is hereby suspended."

Emily died August 13th 1873, leaving an infant, who died shortly thereafter, and her husband, Mr. Swift. At the date of Mrs. Swift's death there was in the hands of the executors of Mrs. Giffin cash or securities largely in excess of what was necessary to pay debts and legacies, and there remained also a large amount of real estate belonging to the residuary estate. In June 1877 her husband, Mr. Swift, on the ground that the will of Mrs. Giffin had worked an equitable conversion of the real estate, and that he was entitled to one-half thereof absolutely, presented a petition to the Orphans' Court, praying that a citation might issue to Mrs. Rankin and the executors of the will to show cause why an order should not be granted for the sale of the balance of the unsold real estate.

Answers were filed thereto by Mrs. Rankin and the executors, and after a replication and argument, the court, Hawkins, P. J., dismissed the petition in an opinion, saying :—

" The key-note in the construction of every will is the ascertainment of the intention of the testator, and when ascertained that intention must prevail unless inconsistent with some law or with public policy.

" The present proceeding raises a question as to the intention of Margaret Giffin, now deceased, with respect to the power of sale which she conferred upon her executors—whether she intended no more than the partial conversion which has already been made, or a peremptory sale of all her real estate. In the consideration of this question it must be borne in mind that conversion is not favored by the law where the result may be to change the course of inheritance, and will be presumed only so far as may be necessary to effectuate the intention of the testator.

" What then was the intention of this testatrix with respect to conversion ? She declares that in order to enable her executors to carry out the provisions of her will she authorizes and empowers them (1.) to make sale of all her estate and (2.) " to pay the bequests hereinbefore made ' (without interest), as they have money on hand

to do so in the order in which they are herein given." What bequests are meant? Certainly not the residuary bequest that *ex vi termini* carries not only principal but interest. The bequests which were to be paid out of the proceeds of sale must then relate to the general legacies, and the power of sale is limited by the amount necessary to pay these general legacies. It was not necessary, so far as the residuary devisees were concerned, that there should be a sale of the real estate in order to carry out the provisions of the will. The devise was to them directly, and the legal title to the land need not have vested in the executors for their benefit; they could take directly from the testatrix; whereas the general legatees must derive title through the executors. Nor is this view inconsistent with the codicil. There is no express reference in the codicil to the power of sale contained in the original will, and no necessary implication of the enlargement of that power. It has been seen that a special fund was to be created by *sale* for the payment of the general bequests. That fund was to be realized by the terms of the will as it could be 'done to advantage.' But there was in addition to this fund a large amount of cash on hand which was not strictly applicable to the payment of these bequests, but out of which the legacy to Mrs. Rankin might be satisfied, leaving a balance for 'final distribution.' The time of payment of this legacy was to be regulated by the 'needs' of Mrs. Rankin, and might be demanded at a time when not only the sale of the real estate could not be made to advantage, but when there might result a serious loss. It is not to be presumed that testatrix intended to subject so large an estate to such a risk for so small a legacy, but rather that she intended Mrs. Rankin to be paid out of the cash on hand. There could, under the circumstances, have been no necessity for sale of the land, and therefore no sale was contemplated.

"In any event, conversion can not be presumed to have been intended further than may be necessary to pay those bequests, which are payable 'without interest,' and to equalize the shares of the residuary legatees in the 'final distribution,' which must terminate the duties of the executors. There is nowhere to be found, in terms, in the will, a positive and explicit direction to sell. The expression 'authorize and empower,' is in itself discretionary; it was used with reference to a purpose, and that purpose has been accomplished. The executors were authorized and empowered to sell 'all' the 'goods and estate' of testatrix, if necessary to carry out the provisions of her will, and they have sold all that was necessary for that purpose. The authority and power conferred upon them has therefore been exhausted.

"But there are two other, and, with reference to this proceeding, more important considerations, bearing upon the question now before the court: 1. There can be no doubt that the power of sale which the testatrix vested in her executors is discretionary as to

time. The sale was to be made ' as it can be done to advantage.' This court will not interfere with the exercise of a discretionary power unless bad faith is shown to exist on the part of the executors, or, loss may result from a failure to exercise such discretion. Neither of these conditions appear in this proceeding. 2. Whether it would be advantageous to make sale of the unsold portion of decedent's real estate, in the present depressed monetary condition of the country, is a question about which there ought to be little contention. So long as there is no absolute necessity for selling, the executors would not be justified in making, nor this court in ordering, a sale, There could be no ' advantage ' in such action.

" For these reasons the rule granted in this matter must be discharged and petition dismissed at cost of petitioner."

From this decree the petitioner took this appeal.

*John C. McCombs* and *Hampton & Dalzell*, for appellant.—It was clearly the intention of the testatrix that her executors should sell all her estate undisposed of for the purposes named in the will, and that thereby there resulted an equitable conversion with legal title in the executors. The legal title being in the executors, the line of descent is broken, and if they refuse to sell it is a proper case for an order of court : McFarland's Appeal, 1 Wright 300.

Conversion being, apart from any statute, a question of intention to be determined from the will of the testatrix, there is to be found in this will a plain and direct intent to convert the whole property therein referred to into personalty for the joint purposes of payment of legacies and distribution : Sheetz's Appeal, 1 Norris 213 ; Brisben's Appeal, 20 P. F. Smith 405. And under the provisions of the Act of February 24th 1834, a naked power of sale in the executors works a conversion of the realty, breaks the descent, and vests the estate in the executors, leaving to the legatees but an interest in the proceeds : Dundas's Appeal, 14 P. F. Smith 325 ; Chew *v.* Nicklin, 9 Wright 84 ; Evans *v.* Chew, 21 P. F. Smith 47.

*R. & S. Woods* and *M. W. Acheson*, for appellees.—Conversion is a question of intention, and to effect it by will proof of the intention must be clear, and the direction to convert therein must be positive and explicit, not inferred from power to sell merely : Chew *v.* Nicklin, 9 Wright 84 ; Bleight *v.* Bank, 10 Barr 132 ; Edwards's Appeal, 11 Wright 153. When a testator orders land to be sold and certain legacies to be paid out of the proceeds, the surplus-money, after the payment of the legacies, does not go to the executor or to the next of kin as an undisposed of residue of personal estate, but results to the heir at law : Wilson *v.* Wilson, 9 S. & R. 424. If land be sold for a specific purpose, the surplus-money shall, as between the heirs and next of kin, be considered

[Swift's Appeal.]

as land, so as to vest in the persons who would have been entitled to it had it remained unconverted: Sayers's Appeal, 79 Penna. 431; Pennell's Appeal, 8 Harris 515. The power of the executors was to sell for the payment of legacies and for no other purpose: Page's Estate, 25 P. F. Smith 95.

The judgment of the Supreme Court was entered, November 11th 1878,

PER CURIAM.—The power of sale in this case was clearly not an absolute direction to sell, and thereby to convert the realty into money, but was an enabling authority to carry out the requirements of the will as to payment of debts and legacies. It had relation to personal as well as real estate, and defined neither as to its extent, leaving the matter necessarily to the judgment of the executors as to when and what to sell. When the purpose of the will became accomplished by payment of debts and legacies, it is clear that the testator did not command a sale of the realty beyond this finished purpose. We cannot say that the Orphans' Court erred in dismissing the petition when conversion had ceased to be necessary.

> Decree affirmed at the costs of the appellant and the appeal dismissed.