# R. A. WILKINSON v. ROBERT BUIST.

ERROR TO THE COURT OF COMMON PLEAS NO. 2 OF PHILA-
DELPHIA COUNTY.

Argued January 23, 1889—Decided February 18, 1889.

1. Where a power of sale is given to executors but the time for its
exercise is not limited by any of the words used in its creation, the lim-
itation to which it is really subject may nevertheless become a mere
question of intention to be ascertained from the manifest general scheme
and purpose of the will.

2. In this case, while the power of sale to the executors, taken alone,
was exercisable at any time after the testator's decease, yet other pro-
visions of the will were construed to show that the exercise of the power
was in fact limited to the lifetime of the testator's widow, and its exer-
cise thereafter by the executors created a defective title.

Before Paxson, C. J., Sterrett, Green, Clark, Will-
iams, McCollum and Mitchell, JJ.

No. 177 July Term 1888, Sup. Ct.; court below, No. 620
December Term 1887, C. P. No. 2.

On February 3, 1888, Robert Buist, Jr., brought assumpsit
against Robert A. Wilkinson to recover the contract price of
land under a written contract of sale between the plaintiff and
defendant, dated June 9, 1887, wherein the plaintiff agreed to
sell and the defendant to buy a tract of 129 acres in the 27th
ward, Philadelphia, for the sum of $125,000, the contract pro-
viding: "The title to be good and marketable and clear of all
incumbrance." Issue.

At the trial on May 2, 1888, it appeared that when the time
of performance under the contract had arrived, the plaintiff
tendered to defendant a deed for the property executed by
himself and Helen Jane Buist and Emma L. Chambers, claim-
ing that these three as tenants in common were possessed of a
good and marketable title to the whole of the land described
in the contract. This deed the defendant refused, upon the
ground that the parties joining in the deed tendered were not
possessed of a good and marketable title to the whole tract,

but only to undivided interests in the same, as tenants in common with Stella Buist and Jane Buist, who owned an undivided one sixth of the estate and an interest in remainder in an undivided one twelfth.

The plaintiff put in evidence the contract with the defendant and showed a good title in Robert Buist, Sr., who died on July 13, 1880, leaving a will dated March 3, 1877, duly admitted to probate, and which was as follows:

"1. I direct my just debts and funeral expenses to be fully paid and satisfied as soon as conveniently may be after my decease.

"2. I give and bequeath unto my dearly beloved wife, Ellen M. Buist, my wearing apparel and all the furniture and provisions which may be in the house at the time of my decease.

"3. I will and direct that my executors hereinafter named shall pay the income and interest of the residue of my personal estate to my said wife semi-annually for and during the whole term of her natural life, and further that they shall allow her to retain possession of all my silver plate for the same period without giving security therefor.

"4. I give, devise and bequeath unto my said wife all my real estate whatsoever and wheresoever situate for and during the whole term of her natural life.

"5. I authorize and empower my said executors and the survivors or survivor of them at any time after my decease in their discretion to sell and convey in fee simple to any person or persons for such price or prices as they shall deem sufficient all or any portion of my said real estate whatsoever and wheresoever situate. It is further my will that the proceeds of all such sales of my real estate whenever made shall be held by my executors in trust for the uses and purposes declared in this my will in relation to the said real estate, and that the purchasers thereof shall not be held in any wise liable for the application or misapplication of the purchase moneys therefor. And I further direct that all investments and reinvestments of the proceeds of such sales as well as of my personal property and estate shall be made in first mortgages of improved real estate situate in the city of Philadelphia, in the public loans of the state of Pennsylvania, or of the United States, of the city of Philadelphia, or in such other securities .

Statement of Facts.

as may be authorized by law. And the said executors shall have power to alter and change the investments of my said estate and to make all proper transfers of the securities held by them for that purpose.

"6. It is further my will and I do hereby direct, order and devise that immediately after the decease of my said wife, the whole of my real and personal estate including the proceeds of all such real estate as shall have been sold by my executors in the lifetime of my said wife shall be divided into six equal parts or shares, and three of such equal parts or shares (being one half part of my said estate real and personal) I hereby devise and bequeath unto my daughter Helen Jane Buist her heirs executors administrators and assigns, one other of such equal parts or shares I give devise and bequeath unto my son Robert Buist his heirs executors administrators and assigns, one other of such equal parts or shares unto Stella Buist and Jane Buist children of my deceased son John M. Buist their heirs executors administrators and assigns, and the remaining one of such equal parts or shares I give devise and bequeath unto Emma Louisa Chambers daughter of my said wife by a former marriage to hold for and during the term of the natural life of her the said Emma Louisa Chambers and upon her decease then I give and bequeath one half part of said last mentioned part or share unto my said son Robert Buist his heirs, executors, administrators and assigns, and the other half part thereof unto my said grandchildren Stella Buist and Jane Buist their heirs, executors, administrators and assigns.

"7. I nominate and appoint my said wife Helen M. Buist my said son Robert Buist and daughter Helen Jane Buist to be the executors of this my last will and testament.

"In Witness Whereof," etc.

It was then shown that letters testamentary upon said will were duly granted to the executors named therein, and that Helen M. Buist, the widow, died on February 26, 1881; that on July 9, 1883, after some proceedings upon their petition to the Orphans' Court, which were put in evidence, prout the same, but were not shown in the paper books, Robert Buist, Jr., and Helen Jane Buist, as surviving executors of the will of Robert Buist, Sr., conveyed the premises described in the contract to John J. S. Rodgers; and that subsequently

by deed duly recorded, John J. S. Rodgers conveyed the same premises to Robert Buist, Jr., Helen Jane Buist and Emma L. Chambers. Having proved the tender of a deed from Robert Buist, Jr., Helen Jane Buist and Emma L. Chambers to the defendant, the plaintiff rested.

The defendant offered no testimony, but requested the court, MITCHELL, J., to charge the jury that

" The power of sale granted to the executors in the will of Robert Buist the elder was a power which expired upon the death of Helen M. Buist, the widow of said Robert Buist, the elder, and as it appears from the evidence that Helen M. Buist died on February 26, 1881, the attempted exercise of the power by the surviving executors in their deed of July 9, 1883, to John J. S. Rodgers failed to convey to him a good and indefeasible title, and the jury should, therefore, find a verdict for the defendant." [1]

Which instruction the learned judge refused to give, and there being no facts in dispute he instructed the jury to find a verdict for the plaintiff, for the amount of his claim.[2]

The jury then returned a verdict for the plaintiff for $90,739.76, and judgment being entered thereon, the defendant took this writ, assigning as error :

1. The refusal of the plaintiff's point.[1]

2. The instruction to find for the plaintiff.[2]

*Mr. Richard C. Dale* (with him *Mr. Samuel Dickson*), for the plaintiff in error :

1. An action by a vendor to recover purchase money against a vendee declining to accept the title on the ground that it is not marketable, is subject to all the defences which would be recognized by a chancellor upon a bill for specific performance. The plaintiff must show a title which the court not only believes to be good, but which is so certain that no court acting within the bounds of reason could declare to be otherwise than good: Swayne v. Lyon, 67 Pa. 436; Colwell v. Hamilton, 10 W. 413; Ludwick v. Huntzinger, 5 W. & S. 51; Bumberger v. Clippinger, 5 W. & S. 311.

2. A power to sell given to executors or trustees lasts only so long as is expressly limited by the terms of the will, or, if

without express limitation as to time of exercise, then only so long as the purpose continues, for the accomplishment of which the power is granted. If the purpose is expressly declared upon the face of the will, no question of construction can arise; but if there is no express declaration of a purpose, then the whole instrument must be examined and the purpose deduced from a consideration of all the terms of the will, and these terms must be so construed as to give effect to the will as an entirety: Swift's App., 87 Pa. 502; Kaufman v. Hollinger, 4 W. N. 27.

3. In the present case we submit that a fair construction of the will requires that the power of sale granted to the executors should be exercised only during the life of testator's widow; that this power of sale, although granted nominally to the executors, was granted to them for no purpose connected with the proper duties of administering the estate qua executors, but was a power granted to them as incidental to a trust imposed upon them by the testator, continuing during the life of the widow and no longer.

*Mr. Wayne MacVeagh* (with him *Mr. A. H. Wintersteen*), for Jane Buist, intervening:

We have in the will of Robert Buist, Sr., a life estate given to the wife, a power of sale given to the executors, and an absolute devise over to certain beneficiaries. It is plain upon the adjudicated cases, that unless there is something very special in the will showing the contrary, this power fell with the life estate: Lantsbury v. Collier, 2 K. & J. 709. There cannot be a good execution of a power of sale, when the purposes for which it was created have ceased: Wheate v. Hall, 17 Ves. 86; Mortlock v. Buller, 10 Ves. 315; Wolley v. Jenkins, 23 Beav. 53; Peters v. Railway Co., L. R. 16 Ch. D. 703, 709–710; s. c. L. R. 18 Ch. D. 429; Cotton's Trustees, L. R. 19 Ch. D. 624; Sugden on Powers, 849, 850.

*Mr. Richard C. McMurtrie*, for the defendant in error:

1. We are relieved from the doubtful cases of title marketable or not, depending as they generally do on matters in pais and whether they are so proved that a purchaser should accept. The question of title here depends on the meaning of a will,

and it is either certainly good or certainly bad, as the law is one way or the other.   That this court has uniformly decided such questions when raised on a bill for specific performance, Womrath v. McCormick, 51 Pa, 504, with a host of other precedents, proves.   And it is a settled rule that the court above should not consider an unfavorable opinion of a court below on the title conclusive : Sheppard v. Doolan, 3 Dr. & War. 8 ; Bewley v. Carter, L. R. 4 Ch. App. 230.   But take the rule at its worst, as stated in Sugden on Vendors, 578, i. e., taking into account what the opinions of competent persons may be, is this court prepared to say that a power such as this terminates with the vesting of an estate in fee simple under the will?

2. It is not disputed that all powers are necessarily limited, for a really absolute power unlimited, must be void, as tending to create a perpetuity.   And we admit that the power, the exercise of which is in question, is of course limited.   On the other hand, the words of the will creating the power are extremely inconsistent with an intention to restrict the execution of the power to the lifetime of the widow.   They are : " I authorize and empower my executors, and the survivors or survivor of them, any time after my decease, in their discretion, to sell," etc.   If the testator had any thought on the subject and had intended to restrict the exercise to the lifetime of his widow, the common-place words, during my wife's life, would have been inserted.   But it is urged that there was a necessity for such a power during the life of the widow, but not afterwards, yet there was no necessity or utility for a power to exist before, that did not exist after the death of the widow. Her life estate could not clog the selling, as she was sui juris, and the power could not have been exercised without her consent; that is, there was the same clog, with or without the power, to wit, the necessity for the widow's consent.

3. What, then, is the real limitation of the power given to the executors in the most unlimited language ?   The object of the power of course limits the power, and there are two possible objects in all such powers: (1) The raising of funds to pay debts, if there are any ; (2) The convenience of distribution, if an actual division is undesirable.   The first certainly existed here, and the second existed quite as much after the

widow's death as before. The evidence incidentally disclosed this; there was an infant devisee having a one sixth interest vested in possession. The giving of a power in such a case, (1) saves the expense of partitioning; (2), what is vastly more important, a power to sell makes the sale controllable by a party in interest and avoids the danger of a forced public sale. The consequences of rejecting this ground for keeping alive a power are most serious. It is nothing more or less than laying down as a rule of property in this state, the hitherto unheard of rule that a power to sell in executors ceases by implication on the vesting of the estate in fee in devisees, though they are not sui juris.

OPINION, MR. JUSTICE CLARK:

The controlling question in this case is upon the true construction of the last will and testament of Robert Buist, the elder, deceased. The power of sale to the executors, apart from the other provisions of the will, is framed in the most general terms; it is wholly without limitation as to time, and taken alone was exercisable in their discretion "at any time" after the testator's decease. But although the time for its exercise is not limited by any words used in its creation, the limitation to which it is really subject may appear upon a consideration of the testator's general design in the disposition of his estate, as shown by the will; for although the power was to be exercised "at any time" in the discretion of the executors, yet this may be ascertained to mean, at any time within some period fixed in the testator's mind, but not fully expressed, ascertainable however from the manifest general scheme and purpose of his will. Whether this was a power which the executors might exercise in the lifetime of the widow, or at any time afterwards, is therefore a mere question of intention, to be ascertained from a study of the entire instrument by which the power was created.

It is plain that the first and principal subject of the testator's solicitude was his wife. After providing for the payment of his debts, etc., he gave to her the furniture, provisions, etc., on hand, and directed his executors to pay to her, semi-annually, for and during the term of her natural life, the entire income and interest of the residue of his personal estate, and then in

the fourth clause devised to her, directly, for life, all his real estate. The fifth clause contains the power of sale, which gives rise to this contention; it is in the following words: "I authorize and empower my said executors, and the survivors or survivor of them, at any time after my decease, in their discretion, to sell and convey, in fee simple, to any person or persons, for such price or prices as they shall deem sufficient, all or any portion of my said real estate whatsoever, and wheresoever situate."

Although this power, as we have said, is in the most general terms, yet the testator's purpose in creating it is, we think, clearly disclosed in what follows. The testator provides, that, "the proceeds of *all* such sales of my real estate, whenever made, shall be held by my executors, in trust, for the uses and purposes declared in this my will, in relation to the said real estate;" that is to say, the proceeds shall be held for the use of his wife, the interest and income thereof payable to her, during her life. In confirmation of this, the testator further provides, as follows: "And I further direct that all investments and re-investments of the proceeds of such sales, as well as of my personal property and estate, shall be made in first mortgages of improved real estate, situate in the city of Philadelphia, in the public loans of the state of Pennsylvania, or of the United States, of the city of Philadelphia, or in such other securities as may be authorized by law;" with power to change the investment, etc.

These provisions of the will plainly show that the testator had in his mind a period of time, within which this power to sell was to be exercised, that is to say, within the lifetime of the widow; the proceeds, *all* the proceeds of the sales, were to be held in lieu of the land, and to be invested with the personal estate for her use, and this implies of course that the sales were to be made in her lifetime.

This theory of the will is further established, moreover, by the fact that in the sixth clause, the testator provides that "immediately" after the decease of his wife the whole of his real and personal estate, "including the proceeds of all such real estate as shall have been sold by his executors in the lifetime of his wife, shall be divided into six equal parts," and go to his children and grandchildren, as therein directed.

It is clear that these sales were not for the payment of debts, as the proceeds were not to be so applied; they were not for the purpose of division or distribution, as the division was not to be made in the widow's lifetime, but "immediately" after her decease, upon the precise footing of the estate, as it then existed. The manifest design of the testator was, that in the lifetime of the widow the best interests of his estate should be protected and promoted by his executors, one of them being his widow, the life-tenant, the other two, his children, devisees in remainder; that the real estate should be subject to sale, in their discretion, at any time during the life of the widow, but at her death the whole estate, as it then existed, should be distributed to those entitled.

Under this construction of the will, it seems unnecessary to decide what would be the effect of an unlimited power, or rather what the effect of a determination of the life estate, without more, upon such a power. A power of sale without limit would doubtless be bad, under the rule against perpetuities, and a testator will not be presumed to have intended anything so absurd. Such powers, when framed in general terms, may therefore in some cases, as stated by Sir GEORGE JESSEL, in Peters v. Lewes etc. R. Co., L. R. 18 Ch. D. 429, be limited by the limitations of the settlement contained in the will. But this is merely upon the presumption that the testator so intended, for in the very case cited, although the life estate had actually terminated, the power was upheld, it appearing from the will that the testator had created it for the purpose of division. Upon the same principle, although the power may be expressed in the most general terms, yet if the purpose of its creation appears, and that purpose has ceased, there can ordinarily be no further execution of the power, as it will be presumed that the testator did not intend that the power should be exercised after the accomplishment of that purpose: Wheate v. Hall, 17 Ves. 86; Wolley v. Jenkins, 23 Beav. 53; Swift's Appeal, 87 Pa. 502.

It is the testator's intention, with respect to the duration of a power, which governs in all cases. When the limitations contained in a settlement by will have expired, and absolute interests in fee have vested in possession in persons sui juris, it may well be supposed that the testator intended that a power

of sale will not after that be exercised; but if, on the construction of the instrument, it appears otherwise, and that the testator intended it should be afterwards exercised, the power will of course be upheld, unless it is obnoxious to the rule against perpetuities, or the cestuis que trustent have elected to take the property as it stands: In re Cotton's Trustees, etc., L. R. 19 Ch. D. 624.

On the other hand, as was said by Sir EDWARD FRY in the case just cited, "It is well ascertained that when there is a settlement of real estate, either by will or by deed, and the settlement ultimately carries the land to a person entitled in fee simple, and there are powers couched in general words and without limitation as to time, which are nevertheless obviously intended to be exercised only during the subsistence of the intermediate limitations, there, the moment the estate in fee is vested, the powers are at an end, because it was the intention of the settlement that they should subsist only during the intermediate limitations." The vesting of the estate absolutely in the persons ultimately entitled is an indication, merely, that according to the true construction of the settlement, the intention of the settlor was that the powers would, in that event, come to an end. To the same effect, although the cases are not wholly similar, is our own case of Kaufman v. Hollinger, 4 W. N. 27.

The validity of the title here, as stated by the counsel for defendant in error, depends upon the construction of this will; it is either certainly good or certainly bad, as the law may be determined one way or the other. It is not a question, therefore, of a doubtful title dependent upon disputed facts. If we are right, however, the title is defective, and the plaintiff, Robert Buist, is not entitled to recover.

The judgment is reversed.

MR. JUSTICE MITCHELL dissents from the interpretation given to the will in this case.