## ELVINA FIDLER ET AL. v. SARAH LASH.

ERROR TO THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued March 8, 1889—Decided March 25, 1889.

[To be reported.]

(*a*) The will of a testator gave and bequeathed all his estate, real, personal and mixed, to his wife, for her sole use so long as she lived; after her death the remainder of the estate was to be divided as follows: to a legatee $25, and to two others, each one half of the estate remaining, in fee. The will next provided:

(*b*) " And lastly, I do hereby order that if my executors hereinafter see proper so to do, the real estate may be sold by him, and the money accruing therefrom together with all other moneys, is to be put out at interest, and the interest paid over to my wife every year. If the interest is not sufficient for her support, she can use such of the principal as is necessary."

1. As the sole object of the power to sell was to provide for the support of the testator's widow, in case the executor considered it necessary to sell for that purpose, the power was exercisable only during the widow's lifetime, and a sale made under the power after her death passed no title to the executor's vendee: Wilkinson v. Buist, 124 Pa. 253.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 304 January Term 1889, Sup. Ct.; court below, No. 84 May Term 1886, C. P.

On April 20, 1886, Isaac R. Lash and Sarah, his wife, in right of said Sarah Lash, brought ejectment against Elvina Fidler and Franklin Hertzog, to recover possession of two houses and lots in the borough of Womelsdorf. Issue.

At the trial on December 5, 1887, the plaintiffs proved the defendants' possession of the property in dispute, title to the said property in Isaac Rutter at his death, testate, on November 16, 1852, leaving to survive him a sister, Sarah Lash, the plaintiff, and a will dated November 14, 1852, duly admitted to probate November 27, 1852, containing the following provisions:

" I do hereby order and direct that all my just debts and funeral expenses be paid as soon as conveniently can be after my decease.

## Statement of Facts.

" Item, I do hereby give and bequeath unto my dear wife Hannah all my estate, real, personal and mixed, for her sole use so long as she lives. After her death, the remainder of the estate is to be divided as follows : To Charles Reedy, son of Michael, I give and bequeath twenty-five dollars ; to Sarah Ermentrout, daughter of Samuel Ermentrout, one half of the estate remaining ; and to Sarah, my sister, intermarried with Isaac R. Lash, the remaining half of the estate, and to their heirs.

" And, lastly, I do hereby order that if my executors here-inafter mentioned see proper so to do, the real estate may be sold by him and the money accruing therefrom together with all other moneys is to be put out to interest, and the interest paid over to my wife every year. If the interest is not suffi-cient for her support, she can use such of the principal as is necessary.

" And, lastly, I do hereby nominate, constitute and appoint Thomas Vanderslice the executor of this my last will and testament, and my wife Hannah likewise.

" In witness whereof," etc.

The plaintiffs, having further shown that Mrs. Hannah Rut-ter, the testator's widow, occupied one of the houses until her death on January 16, 1872, the other being occupied by a ten-ant, rested.

The defendants then offered in evidence: deed dated April 1, 1872, Thomas Vanderslice executor of the last will and testament of Isaac Rutter, deceased, to Henry Vanderslice, for the property described in the writ; recorded, April 11, 1872. Also, in connection with it, the inventory and appraisement in the estate of Isaac Rutter, deceased, filed December 18, 1852 ; and the account of Thomas Vanderslice, surviving executor of the last will and testament of Isaac Rutter, deceased, filed December 2, 1872 ; January 25, 1873, confirmed nisi ; which account shows a balance due the accountant of $149.75: to be followed by other evidence, conveyance from Henry Van-derslice, to Thomas Vanderslice, who died in possession and intestate; and in whose heirs the legal title to the premises now vests ; and that the defendants hold as the heirs and les-sees of the heirs of Thomas Vanderslice, deceased.

Objected to by plaintiffs, that the offer of the inventory and

account and deed executed by the executor is irrelevant and immaterial and inadmissible, for the reason that the plaintiffs claim as the devisees of Isaac Rutter under his last will and testament, which has been offered in evidence and contains no power to the executor to sell the real estate except during the lifetime of Hannah Rutter, the widow of the testator, and for her benefit; but after her death the power ended, and the deed therefore subsequently executed by Thomas Vanderslice, the surviving executor to himself through his brother, was without any authority now appearing in evidence.

By the court: In the view which the court regard this will, there is no power in the executor to sell; there is no conversion of the real estate into personalty; and so far as this present offer goes, I do not think the executor had any power to make a sale. The account not showing that the debit side is made up of a sale of real estate, the offer of the deed to some one, and back to himself I do not think is admissible. The offer as presented I do not think is admissible; and even if the evidence were in, in the view which I have of the case, I would be compelled to say to the jury that the plaintiffs would be entitled to recover the undivided one half of this property. The offer is overruled; exception.[1]

The defendants rested.

The court, HAGENMAN, P. J., then charged the jury:

" Under this evidence as it now stands, the plaintiffs are entitled to a verdict for the undivided one half of the property described in the writ."[2]

The jury returned a verdict for the plaintiffs for the undivided one half of the premises described in the writ. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendants took this writ, assigning as error:

1. The refusal of the defendants' offer.[1]
2. The charge of the court to the jury.[2]

*Mr. C. H. Ruhl* (with him *Mr. Daniel Ermentrout*), for the plaintiffs in error:

1. The authority given to the executors by the will of Isaac

Rutter, to sell the real estate, was not limited to the lifetime of the widow.   The correctness of this proposition is dependent upon the intention of the testator, as gathered from his will considered in its entirety.   He first bequeaths to his wife all his estate, for her sole use as long as she lives.   It is to be divided after her death.   He makes no division of his estate himself, but directs it to be divided in the future.   During the lifetime of the widow, the sale of his real estate was left discretionary with his executors : after her decease there was a mandatory direction to the surviving executor to sell it, to the end that he might divide it in 'accordance with the provisions of the will. The surviving executor must make the distribution, and by implication he has all the necessary powers : Gray v. Henderson, 71 Pa. 370; Myers's App., 62 Pa. 107.   We submit that the case is ruled by Roland v. Miller, 100 Pa. 47.

2.  Assuming that the will did not give authority, express or implied, to the executor to sell the real estate after the death of the widow, the offer to show that he had in fact sold it and accounted for the proceeds, and that his account was settled and confirmed by the Orphans' Court having jurisdiction thereof, should have been received in evidence to show that plaintiffs acquiesced in the sale for a period of sixteen years and were therefore estopped from questioning its validity.   Ejectment is an equitable action.   The time for the plaintiffs to speak and assert their claim was when the property was sold and the proceeds accounted for by the executor.   One's silence, when in good conscience he ought to speak, will close his mouth when he would speak: 2 Hermon on Estoppel, § 939.

*Mr. Richmond L. Jones*, for the defendants in error :

1.  The sister and niece acquired their interest in the real estate upon the death of the testator, when it vested in them subject to the life estate of the widow, and further subject to the power of the widow to have it sold, for her better maintenance and support ; but as the power to sell for this purpose was not exercised during the life of the widow, it was exhausted and the title of those in remainder became absolute.

2.  There is no importance to be attached to the order to divide, which is very common phraseology in wills relating to real estate, and in this case, even if the construction were as

hypercritical as the plaintiffs desire, it would suit the condition of the real estate, which consisted of two adjoining houses and lots of about equal value.

3. It does not appear that the testator was making his will with a view to the accommodation of his executors, nor that he contemplated a conversion of his real estate, except for the purpose and in the contingency clearly expressed. His solicitude was first for his widow, to the extent of all his property, and after that for his sister and niece, who were to take it in the condition in which the widow left it.

OPINION, MR. JUSTICE STERRETT:

Both parties to this contention claimed under Isaac Rutter, former owner of the lots in controversy, who died seised thereof in November, 1852, having first made his last will, wherein he devised the same, inter alia, as follows:

" I do hereby give and bequeath unto my dear wife Hannah all my estate, real, personal, and mixed, for her sole use, so long as she lives. After her death, the remainder of the estate is to be divided as follows: To Charles Reedy, son of Michael, I give and bequeath twenty-five dollars; to Sarah Ermentrout, daughter of Samuel Ermentrout, one half of the estate remaining; and to Sarah, my sister, intermarried with Isaac R. Lash, the remaining half of the estate, and to their heirs.

" And, lastly, I do order that if my executors, hereinafter mentioned, see proper to do so, the real estate may be sold by him, and the money accruing therefrom, together with all other moneys, is to be put out to interest, and the interest paid over to my wife every year. If the interest is not sufficient for her support, she can use such of the principal as is necessary.

" And, lastly, I do hereby nominate, constitute, and appoint Thomas Vanderslice, the executor of this my last will and testament, and my wife, Hannah, likewise."

The will was probated November 27, 1852, and letters testamentary issued to Thomas Vanderslice and Hannah Rutter, executor and executrix therein named. Testator's widow, Hannah Rutter, having survived him nearly twenty years, died in January, 1872. The real estate was not sold during her lifetime, but shortly after her decease the surviving executor, Thomas Vanderslice, sold at public auction and conveyed the

same for $1,300 to Henry Vanderslice, who afterwards conveyed the same to said Thomas Vanderslice, under whose heirs the defendants below are in possession.

Plaintiff below made out a prima facie case by giving in evidence the will, proving the death of the life-tenant, and showing that the property in controversy is the same that was devised to her and Sarah Ermentrout, etc.

The defendants, admitting title in Isaac Rutter, the testator above named, undertook to show title from him, through the deed of his executor, etc., to the heirs of Thomas Vanderslice, under whom they are in possession; and, for that purpose, they offered the executor's deed, in connection with the inventory of the personal estate of Isaac Rutter, and the account of the surviving executor, etc. The offer was objected to on the ground that the power of sale was operative only during the lifetime of the widow, and that the attempted conveyance, by virtue of the authority given in the will, passed no title to the surviving executor's vendee. The objection was sustained and the proposed evidence excluded. This action of the court constitutes the first assignment of error. The next and last is the direction to find for the beneficial plaintiff an undivided moiety of the lots in controversy.

If the testimony referred to in the first specification had been received it would have shown that, after the death of testator's widow, the surviving executor, by virtue of the power contained in the will, undertook to sell and convey the lots in controversy to Henry Vanderslice, from whom defendants below derived or claim to have derived title. It is not claimed that he ever had any other than the testamentary power referred to. It may also be conceded, for the purposes of this case, that the inventory, executor's account, etc., would have shown that the purchase-money mentioned in the deed was accounted for by the surviving executor, and that the estate was still indebted to him in the sum of $149.75.

Conceding everything that is claimed for the rejected evidence, the facts which it would have tended to prove are wholly irrelevant and immaterial, unless the testamentary power continued to exist after the decease of the widow. That, indeed, is the cardinal question in the case. If the power was limited to the lifetime of the widow, the executor's vendee

took no title, and the beneficial plaintiff below was entitled to a verdict for an undivided moiety of the lots.

It is not even claimed that any part of the purchase-money was ever paid to or received by either of the devisees in remainder, nor that either of them ever did or omitted to do anything whereby they could be estopped from denying the authority of the surviving executor to sell. The controlling question therefore is, as above stated, whether the testamentary power was limited to the lifetime of the widow?

The devise, as we have seen, is to the widow for life, remainder in fee to Sarah Ermentrout and plaintiff below as tenants in common. It appears to have then occurred to the testator that for the better and more certain support of his widow, it was advisable to authorize his executors, in their discretion, to sell the real estate, invest the proceeds, etc.; and he accordingly created the testamentary power in question, directing the proceeds of the sale to be invested and interest paid annually to his widow, with the right to use as much of the principal as might be necessary for her support. It is very evident that testator's wife was the chief object of his bounty, and that the power was created for her benefit, and for no other purpose. There is nothing in the will to indicate that it was intended to be exercised for the purpose of converting the land into money to pay debts or for distribution. The sole object was to provide for the support of the widow, in case his executors considered it necessary to sell for that purpose. The power was therefore exercisable only during her lifetime, and upon her death it ceased to exist. No principle is better settled than that when the object for which a power has been created has been accomplished, or has become impossible or unattainable, the power itself ceases to exist: Wilkinson v. Buist, 124 Pa. 253; Eby v. Dix, 6 West. Rep. 509, and cases there cited. The reasoning of our brother CLARK in the first cited case is applicable here.

Neither of the assignments of error is sustained.

Judgment affirmed.

MR. JUSTICE MITCHELL, dissenting:

In this case, as in Wilkinson v. Buist, 124 Pa. 253, I concur entirely in the principle determined, that the duration of the power to sell depends on the intent of the testator. But in this,

Syllabus.

as in that case, I am unable to read the particular will in controversy in the same way as my brethren.

In the present case the testator gave his entire estate, real, personal, and mixed, to his wife for life, but with power to consume, necessarily implied as to the personalty, and expressly given as to sale and use of the proceeds of the realty. "After her death the remainder of the estate is to be divided as follows: to Charles Reedy . . . . . I give and bequeath twenty-five dollars; to Sarah Ermentrout . . . . . one half of the estate remaining," etc. I am of opinion that the testator meant to treat his whole estate as one fund, to be applied to his wife's use during her life, and whatever was left at her death was to be treated in the same way as a single fund, irrespective of whether it came from personalty or realty. There was a clear intent that the executor should make distribution, and the power to sell therefore survived.