## Rieder, Appellant, *v.* Miller.

*Wills—Power of sale—Power to mortgage—Life estate—Executors and administrators.*

Where a testator having full knowledge that his personal estate would be ample for the payment of his debts, directs in his will that his debts and funeral expenses shall be paid, and then gives the residue of his estate, without regard to its character, to his wife for life with remainder over to his children, and appoints his wife and a daughter executrices, with authority and power to sell part or all of his estate real or personal, and to execute to the purchasers thereof "good or sufficient deed, or deeds in fee simple, or for any less estate," the widow and the daughter may in the former's lifetime execute a valid mortgage of the real estate. In such a case the testator's purpose was to give to his executrices the discretionary power to make the life estate of his wife as valuable to her during her lifetime as the conditions of his property might require: Schenck v. Clyde, 53 Pa. Superior Ct. 652, explained and distinguished.

Argued Oct. 8, 1917.   Appeal, No. 292, Oct. T., 1917, by plaintiff, from order of C. P. No. 3, Philadelphia Co., March T., 1917, No. 1270, discharging rule for judgment for want of a sufficient affidavit of defense in case of Charles Rieder et al., Trustees of the Master Barbers' Beneficial Assn., v. Catharine Miller et al., Executrices, etc.   Mortgagors, Catharine Miller et al., real owners. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.   Reversed.

Scire facias sur mortgage.

Rule for judgment for want of a sufficient affidavit of defense.

From the record it appeared that John W. Miller died on May 26, 1900, leaving a will which was as follows:

"First.—I order and direct the payment of all my just debts and funeral expenses as soon after my decease as the same conveniently can be done.

"Second.—All the rest, residue and remainder of my estate whether real, personal or mixed, I give, devise and bequeath unto my beloved wife, Catharine Miller, to have and to hold the same to her during all the term of her natural life.

"Third.—After the death of my said wife, Catharine Miller, I give, devise and bequeath one equal third part of my said residuary estate unto the issue of my son, John B. Miller, now deceased, absolutely, and I give, devise and bequeath one other equal third part of my said residuary estate unto my daughter Laura A. Jaquett absolutely, provided she survives my said wife Catharine Miller, and in case she does not survive my said wife, then I give her said share unto her issue absolutely; and in default of issue I give her said share unto my daughter Sarah P. Miller absolutely, and the remaining one equal third part or share of my said residuary estate I give, devise and bequeath unto my said daughter Sarah P. Miller, absolutely; and in the event of her not surviving my said wife but leaving issue, then I give any share or interest which she might be entitled to under this my will to her issue, absolutely; and in default of issue, I direct that her share shall be distributed as though I had died intestate and unmarried.

"Fourth.—I hereby authorize and empower my executors hereinafter named to sell and dispose of any part or all of my said estate, real or personal, either at public or private sale, and for such price or prices as they may deem proper, and for such purpose to sign, seal, execute and deliver to the purchaser or purchasers thereof, good and sufficient deed or deeds in fee simple, or for any less

estate, without any liability on the part of such purchaser or purchasers to see to or be responsible for the application of the purchase-money.

"Fifth.—I hereby nominate, constitute and appoint my said wife, Catharine Miller, and my daughter Sarah P. Miller to be the executrices of this my last Will and testament hereby revoking and making void any and all wills by me at any time heretofore made."

The personal estate of the testator was settled in the Orphans' Court in July, 1901, showing a balance after payment of debts and funeral expenses of $4,000.

During the lifetime of the widow, on February 3, 1914, the executrices, the widow and daughter, by virtue of the power contained in the will gave and executed the mortgage in suit to the Integrity Title Insurance, Trust and Safe Deposit Company, since assigned by said company to the appellants.

Default having been made in the payment of the interest when due, the mortgage was foreclosed.

The owners of two-thirds interest in the mortgaged premises filed an affidavit of defense averring that the execution of the mortgage was not within the scope of the authority conferred by the will.

The court discharged the rule for judgment.

*Error assigned* was the order of the court.

*Frederick L. Breitinger,* for appellants.—The power of sale was created for the benefit of the widow and was exercisable during her lifetime: Wilkinson v. Buist, 124 Pa. 253; Fidler v. Lash, 125 Pa. 87; Potts v. Breneman, 182 Pa. 295; Eberly v. Koller, 209 Pa. 298.

The power of sale included the power to mortgage: McCreary v. Bomberger, 151 Pa. 323; Fidelity Ins. Trust, Etc., Co. v. Wurfflein, 15 W. N. C. 28.

*Carl M. Bowman,* with him *George Ovington, Jr.,* for appellee,—The power of sale in the will of the decedent

was .a general power, without any limitation as to· its time of execution. This, however, does not mean that there is no time limit whatsoever to its execution. Where there is no time limit to a power it is effective only so long as it is necessary for the donee of the power to perform the duties of his office; or, in other words, when the object for which the power has been created has been accomplished the power itself ceases to exist: Henson's Est., 12 Pa. Dist. Rep. 326; Eberly v. Koller, 209 Pa. 298; Schenck v. Clyde, 53 Pa. Superior Ct. 652; Miller's Est., 11 Dist. Rep. 714.

It is submitted that the case at bar is ruled by Schenck v. Clyde, 53 Pa. Superior Ct. 652.

OPINION BY HEAD, J., December 13, 1917:

The question involved in this appeal is single and simple of comprehension. It does not follow, however, its correct solution may not be attended with some diffi-· culty real· or apparent. The action was scire facias sur mortgage. The defendants claiming to be the real owners of the property covered by the mortgage, asked and obtained leave to intervene pro interesse suo. There was an affidavit of defense filed. There followed a rule for judgment for want of a sufficient affidavit, which was discharged. The plaintiffs appeal. The defense set up was the mortgagors who were the executrices of the will of one John W. Miller, were without power to execute the said mortgage and, therefore, the plaintiffs could recover nothing because of it. In approaching the solution of the question of law thereby raised, we properly assume not only that every fact duly averred in the affidavit is true, but also that the affiants have stated their case as strongly in their own favor as their knowledge of the question in controversy would permit them to do.

The material facts are these: John W. Miller, being seized of both real and personal estate, died in 1900 testate. In the same year, letters testamentary were

granted to his widow and daughter, the executrices named in his will. Their account of the personal estate of the testator was filed in due time and finally adjudicated in July, 1901. It showed a balance of upwards of $12,000 in favor of the estate, which was awarded to his widow under the terms of his will upon her giving security as required by the statute. In February, 1914, the widow and daughter, under the power claimed to have been given to them by the will of the testator, executed and delivered the mortgage in question. As already stated, the defense is not that no such power was given, but that it had been spent or exhausted by lapse of time or that no sufficient reason existed from the viewpoint of the intervenors for its exercise, and consequently the mortgage was without legal effect as against the real estate of which the testator died seized. We must, therefore, turn to an examination of his will.

After directing in the first clause the payment of his debts and funeral expenses, he continues in the second clause as follows: "All the rest, residue and remainder of my estate whether real, personal or mixed, I give, devise and bequeath unto my beloved wife, Catharine Miller, to have and to hold the same to her during all the term of her natural life. Third. After the death of my said wife, I give, etc., one equal third part of my said residuary estate unto the issue of my son, John B. Miller, now deceased," and in like terms the remaining two-thirds to other children or their surviving issue. The fourth clause creates the power of sale directly in controversy. We quote it: "I hereby authorize and empower my executors hereinafter named to sell and dispose of any part or all of my said estate, real or personal, either at public or private sale, and for such price or prices as they may deem proper, and for such purpose to sign, seal, execute and deliver to the purchaser or purchasers thereof, good and sufficient deed or deeds in fee simple, or for any less estate, without any lia-

bility on the part of such purchaser or purchasers to see to or be responsible for the application of the purchase-money." Of this will he appointed his said widow and his daughter executrices.

It cannot be doubted that the power thus conferred was broad enough to authorize the execution of the mortgage in question. We do not understand anyone to contest that proposition. That in the attempted execution of it during the lifetime of the widow there is no evidence of any violation of the law against perpetuities, appears to be conceded. That the widow of the testator was the first and chief object of his bounty, could not be denied. That the testator must have had some object in giving to those who were to execute his will the full discretionary power indicated by the clause quoted and that in the construction of his will, that power can neither be excluded or ignored, would appear to be beyond debate. That there was no devise of his real estate, qua real estate, either to his widow for life or in remainder to his children, is apparent from the most casual reading of the will. Finally, that there was no specific expressed reason for the limitation of the power given, the language of the will itself determines.

In cases of this character, precedents are to be studied to obtain a just conception of the principles, necessarily general, which should apply in the construction of all doubtful wills. But as it is the rarest of occurrences that two individual wills should be identical in terms, it follows that in the construction of any particular one, a well-established principle cannot be correctly applied except as it may be pertinent to the particular situation created by that will. Now let us assume, with the court below, that the broad legal view with which a court should approach the consideration of the proper construction of the power contained in the will before us, is well expressed by the Supreme Court in Fidler v. Lash, 125 Pa. 87, in the following language: "No principle is better settled than that when the object for which a

power has been created has been accomplished, or has become impossible or unattainable, the power itself ceases to exist." We naturally inquire then what was the object in the mind of the testator which prompted him to confer the power contained in his will? We can see but one. He must have known his personal estate was more than ample for the payment of his debts. By a direct provision in the first clause of his will, he subtracted from his entire estate a sum sufficient for the payment of his debts and funeral expenses. All of the "residue" of his estate without regard to its character, he gave to his wife for life, and it was shares in his residuary estate and not in lands, tenements or chattels, specifically, that he gave after the death of his wife to his children. Manifestly, the ample power of sale contained in the will was not for the purpose of supporting any trust created by the will. We are then driven to the conclusion that the power contained in the will was to be exercised for the benefit, advantage and improvement of the life estate in favor of the first object of the testator's bounty. The power was executed during her lifetime. The makers of the mortgage received its value. What became of the money, the record before us does not disclose. There is not the slightest statement of fact in the affidavit to warrant a conclusion it was in any way misappropriated, nor is there anything to indicate either that the estate of the widow who has died since the execution of the mortgage, or of her daughter who was her coexecutrix, is insolvent. Nothing to support any conclusion the intervening defendants are not in a position to secure their respective shares of the money resulting from the execution and delivery of the mortgage. If the real property of which the testator died seized had become in such condition that the revenue therefrom would be less than the income from the sum obtained on the mortgage, to whom did the testator leave the discretion to determine that fact? Manifestly, to those who were to exercise the power conferred in his will.

Looking at this will alone then, we conclude we cannot regard the discretionary power of sale conferred by his will as a nullity.   If so, we can ascribe it to no other purpose than to give to his executrices the discretionary power to make the life estate of his wife as valuable to her during her lifetime as the conditions of his property might require.   From what we have said it would follow, the power was neither spent nor exhausted at the time of the execution of the mortgage and that the sole defense set up in the affidavit is without legal foundation.

Without attempting to review or analyze the many authorities to which we are referred in the careful opinion of the learned court below and in the argument of counsel, we think we should point out some of the elements that differentiate the case at bar from our own case of Schenck v. Clyde, 53 Pa. Superior Ct. 652.   We adhere to the statement of the governing legal proposition contained in the opinion in the case cited: "It is true, the power conferred is without any express limitation of time within which it should be exercised.   It must also be agreed that the language quoted defining the purposes for which the power might be lawfully exercised is general.   But it does not follow from these facts that the executor named in the will, or a succeeding administrator de bonis non, might, at any indefinite time after the death of the testatrix, sell and convey the property without any regard to the nature of the power conferred and the purposes for which it should be exercised.   The power conferred must necessarily be construed in the light shed by the will on the purpose of the testatrix in conferring it."   In the will then being considered, the testatrix devised her real estate, qua real estate, to her husband during the term of his natural life, and after his death the same real estate was devised over.   In the case at bar, as we have already pointed out, there was no such devises either to the life tenant or to those in remainder.   In the power conferred by the

will in the case cited, the purpose for which it was to be exercised, was stated by the testatrix in these terms: "For the payment of my debts or for any other purpose." In the case before us, the purpose for which the power was conferred, is not stated in terms, and must be gathered from the whole of the will. In the case cited, there being an express statement that the power was to be exercised for the payment of debts or for any other purpose, we necessarily applied to the general expression, the doctrine so often declared in the construction of statutes expressed in the phrase "ejusdem generis."

It appears to us the distinction between the two cases is thus plainly marked. We have examined all of the authorities referred to in the opinion of the learned court below and in the paper books of counsel. We discovered no one of them of which in our judgment it can be correctly predicated the conclusion we have reached is not well grounded. We are, therefore, constrained to reverse the order of the court below, discharging the rule for judgment for want of a sufficient affidavit of defense.

The order of the court below, discharging rule for judgment, is reversed; the rule is reinstated and the record remitted to the court below with direction to enter judgment for the plaintiffs, unless legal or equitable cause to the contrary be shown.