Joseph M. Potts, Administrator d. b. n. c. t. a. of Samuel Miller, deceased, *v*. Joseph P. Breneman, Appellant.

*Will—Power of sale—Administrator d. b. n. c. t. a.*

Where a testator gives his widow a life estate in both his real and personal property, and appoints her executrix of his will "with power and authority to sell, dispose of and convey in fee simple, any or all of" his real estate, "and change any investment of" his personal property, relieving her from giving "security to secure the interest of the person or persons entitled in remainder to any part or portion" of his estate, an administrator d. b. n. c. t. a. appointed after the death of the widow has power to sell and make good title to testator's real estate.

Argued May 21, 1897. Appeal, No. 182, Jan. T., 1897, by defendant, from judgment of C. P. Lancaster Co., March T., 1897, No. 32, on case stated. Before Sterrett, C. J., McCollum, Mitchell, Dean and Fell, JJ. Affirmed.

Case stated to determine whether the plaintiff had power to sell real estate.

Livingston, P. J., filed the following opinion:

From the case stated it appears:

1. That Samuel Miller late of the city of Philadelphia, Pa., died on or about March 30, A. D. 1874, having first made his last will and testament which, after his decease, was duly proved in the register's office at Philadelphia, and, in and by which, he directs inter alia, as follows:

"I direct that all my just debts, funeral and other expenses be paid as soon as can be. My house furniture and household goods I give to my beloved wife Eliza, her heirs and assigns.

"I give and bequeath the use, rents, income and interest of all the rest, residue and remainder of my estate, real, personal and mixed, whatsoever and wheresoever, to my said wife, for and during her natural life; subject to the payment of three hundred dollars out of said rents, incomes and interest to Mary McCullouch, who has been a long time with me, annually and regularly, during her life.

"After the decease of my said wife, I give, devise and be-

queath the said residue and remainder of my estate, real, personal and mixed, unto all my brothers and sisters then living, and the issue and descendants of any of them then dead, and Edith Fodell, now the wife of John A. Shulze, if then living, and her issue and descendants, if she be then dead, their heirs and assigns, per stirpes, in equal shares and parts ; subject, however, to the payment of the aforesaid annuity of three hundred dollars, thereafter, to the said Mary McCullouch annually and regularly, during her life, and which annuity I hereby give and bequeath to her.

" I constitute and appoint my said wife, Eliza Miller, sole executrix of this, my last will and testament, with power and authority to sell, dispose of and convey in fee simple, any, or all of my real estate, and change any investments of my personal property—as she shall deem most advantageous to her and to my estate.—And, I direct, that my said wife shall not be required by any court to give security to secure the interest of the person or persons entitled in remainder to any part or portion of my estate of which she shall, under this my will, be entitled to the use, rents, income and interest during life, as hereinbefore provided. Whenever the same shall accrue, or vest in possession."

To this will he added a codicil in which he directed that the devise and bequest to Edith Fodell should not go to her absolutely, nor to her issue and descendants, heirs and assigns, " but, that the principal (subject to its proportion of a certain annuity in said last will mentioned) shall be put out and kept at interest after the decease of my said wife, and such interest shall be paid to said Edith Fodell annually, or oftener, as it accrues, during her life, and at, or immediately after her decease, the principal shall be paid and distributed to and among all my brothers and sisters then living, and the issue and descendants of any of them then dead, in the manner as specified in my said will concerning the residue of my estate."

A copy of said entire will, together with the list of the heirs and legatees of Samuel Miller, deceased, are appended to the case stated and made part thereof. We shall not insert them here.

2. Eliza Miller, the sole executrix of said last will and testament, died on or about December 30, 1896, and on the second

day of January, A. D. 1897, letters of administration de bonis non cum testamento annexo were granted by the register of wills of Philadelphia to Joseph M. Potts, he having first given security to truly administer and account in said estate. And Mary McCullouch, named in said will, and an annuitant, died in the year 1896.

3. At the time of the making of said will and at the time of the death of said testator he was the owner in fee simple of real estate, inter alia, as follows : A certain lot or piece of ground, marked No. 203, on the plan of lands of The Logan Land Association, located and situated in Philadelphia, on the west side of Twenty-seventh street, at the distance of two hundred and fifty-two feet and six inches (252 ft., 6 in.), southward from the south side of Cumberland street in the twenty-first ward, of the city of Philadelphia, containing in front or breadth, on the said Twenty-seventh street, twenty feet (20 ft.), and extending that breadth, in length or depth, westward, between parallel lines, at right angles with the said Twenty-seventh street, on the north line thereof, one hundred and thirty feet and four and five eighths inches (130 ft., 4⅝ in.), and on the south line thereof, one hundred and thirty-one feet and eleven and three fourths inches (131 ft., 11¾ in.), to lands of Henry Duhring.

3½. The testator owned other lands in Forest and Venango counties, Pa., and left personal property of the value of about $30,000.

4. That, on the first day of March, 1897, articles of agreement were entered into, between Joseph M. Potts, administrator d. b. n. c. t. a., plaintiff, of the one part, and Joseph P. Breneman, defendant, of the city of Lancaster, of the other part, for a sale of the above described premises, for eleven hundred dollars ($1,100) payable on March 3, 1897, on the delivery of the deed, the sale being made for the purpose of distributing the proceeds, under the will of Samuel Miller, deceased. On March 3, 1897, the said Joseph M. Potts, administrator, plaintiff, tendered to the said Joseph P. Breneman, defendant, a deed, sufficient and correct in form, for the above described premises, and demanded the purchase money, eleven hundred dollars ($1,100), according to the agreement, which the said Joseph P. Breneman declined and refused to pay, admitting

that the deed was sufficient in form ; that the title of Samuel Miller in said premises was complete ; that there were no liens or incumbrances on said property ; that all the debts of said Samuel Miller had been paid, but averring that under the will of said Samuel Miller the administrator d. b. n. c. t. a. had no power to sell; that said power in the executrix terminated with and at the death of Eliza Miller, and that the said Joseph M. Potts, administrator d. b. n. c. t. a. could not make a legal conveyance of and title to said premises.

5. That all the debts of Samuel Miller, deceased, were paid by his executrix named in the will within a year after his death.

And, by the case stated, the court is asked if it shall be of opinion that, under the said will of Samuel Miller, deceased, and the grant of letters of administration d. b. n. c. t. a. to Joseph M. Potts, the said administrator had power, under said will, to sell said real estate, and to make a good and legal title to Joseph P. Breneman, the said defendant, to enter judgment for the plaintiff in the sum of eleven hundred dollars ($1,100) ; but, if the court shall be of opinion that the said power to sell cannot be exercised by the said administrator d. b. n. c. t. a., and that said plaintiff had not power to make a good and legal title to said real estate, then to enter judgment for the defendant, with costs.

The question presented for our consideration and determination in the case thus presented is whether or not Mr. Joseph M. Potts, administrator d. b. n. c. t. a. of Samuel Miller, late of the city of Philadelphia, deceased, has power and authority, under the will of Samuel Miller, deceased, to sell the real estate of the testator.

That, by his will, the testator gave to his wife, and subsequently widow, Eliza Miller, a life estate in all his real estate and personal property, subject to the annuity of Mary McCullouch, and after the decease of his wife he bequeathed and devised the remainder of his estate, real, personal and mixed, unto all his brothers and sisters then living, and the issue and descendants of any of them then dead, and Edith Fodell (then), the wife of John A. Shulze, if then living, and her issue and descendants if she be then dead, their heirs and assigns, per stirpes, in equal shares and parts, subject to the payment of the annuity of $300 to Mary McCullouch, annually, during her life,

cannot be questioned, is not denied. He made his wife, Eliza Miller, sole executrix of his will, and gave her "power and authority to sell, dispose of and convey, in fee simple, any, or all of his real estate," and to change any investments of his personal property, as she should deem most advantageous to her and to his estate.

Eliza Miller, the executrix, died in December 1896, and in January, 1897, letters of administration d. b. n. c. t. a. were duly granted to Joseph M. Potts.

As appears by Exhibit "B," attached to and filed with the case stated, there are about sixty persons who are now entitled to participate in the distribution of this estate, who, so far as known, are scattered through the states of Pennsylvania, New Jersey, Maryland, New York, Virginia, West Virginia, District of Columbia, Oregon, Ohio, Iowa, Illinois and Kansas.

By the act of assembly of March 12, 1800, sec. 3, it is provided that, "If, where such devises as aforesaid have been or shall be made, or authorities and directions given, such executor or executors are deceased, or shall hereafter die, or have refused, or shall hereafter refuse, or have renounced, or shall renounce, and letters of administration with the will annexed have been, or shall be granted, it shall and may be lawful for such administrators with the will annexed to sell and convey such real estates, and otherwise act respecting the same as fully and completely as if such deceased, refusing or renouncing executor or executors, might or could have done, were he, she or they still living, or had he, she or they accepted the execution of the last wills and testaments of such testators, or had not renounced." And, by the act of February 24, 1834, it is provided that:

"Sec. 13. The executors of the last will of any decedent, to whom is given thereby a naked authority only to sell any real estate, shall take and hold the same interests therein, and have the same power and authorities over such estate for all purposes of sale and conveyance, and also of remedy by entry, by action or otherwise, as if the same had been thereby devised to them, to be sold, saving always to every testator his right to direct otherwise.

"Sec. 14. The survivor or survivors of several executors of any last will containing a devise of real estate to such executors

for the purpose of sale or otherwise, or a power or naked authority only to them to sell the same as aforesaid; also, the acting executor or executors of any such will, where one or more of them resign, refuse or renounce the trust, or are discharged or dismissed therefrom, shall have the same interest in and power over such estate for all purposes of sale, conveyance and remedy as aforesaid, as all the executors might have or exercise for the like purposes, saving always to every testator his right to direct otherwise."

And section 67 provides that all and singular the provisions of this act relative to the powers, duties and liabilities of executors are hereby extended to administrators with a will annexed.

Let it be conceded, as has heretofore been decided, that administrators cum testamento annexo have no power as such, independently of these several acts of assembly, to execute a power given to executors, to make sale of the lands of the testator. The powers of executors c. t. a. under these acts have been the subject of numerous decisions which have clearly and definitely established the principles and rules of law, and it only remains to determine whether or not the facts as presented in any particular cases fit them. Some of those rules of law may be stated thus:

1. A power to sell for the purpose of distributing the proceeds amongst persons who are named or described in the will is a power which belongs to the executor, virtute officii.

2. Where there is no limitation as to the time of exercising the power of sale given to executors in a will, the same may be controlled within a certain period, ascertainable from the general scheme and purpose of the will.

3. The duration of an executor's power to sell real estate depends upon the intent of the testator, and where the will shows that the testator gave this power for a particular purpose the power ceases to exist after that purpose has been accomplished or has become impossible or unattainable.

4. Where power is given by will to executors to sell real estate, with a view to the distribution of the proceeds among legatees, such power belongs to the executors virtute officii.

Was not the intention of Samuel Miller, the testator, to give his executrix, or her successor, power to sell his real estate,

with a view to distribute the proceeds thereof, with his personal
estate among the legatees named and specified in his will?

From the terms of the case stated, we learn that Samuel Mil-
ler, the testator, left a considerable estate, real and personal.
His widow survived him more than twenty years. At the time
of her decease, and we may say, presumably, at the time of the
testator's decease, his relatives, heirs and legatees, as we have
seen, were scattered over (many of) the United States. While
he gave his wife the use, income and profits of his estate, she
was given no power to use or consume any part of the corpus
or principal. She had full power and authority to "sell the
lands and to change the investments and securities." Under
the will she was undoubtedly authorized to convert the whole
estate into money at any time she chose, and to have it in this
form, for distribution at the time of her death, there need have
been no real estate to be sold after her death, if she had seen
proper to sell it during her life. It will be observed that the
power to sell is not given to her nominatim merely, nor to her
. . . . as his wife or widow, as life tenant, or as the beneficiary
of the trust.

In the first item of his will he gives to his wife his house,
furniture and household goods. In the second item he gives
to his wife the use, rents and income of his estate. In the next
clause he gives the residue to his brothers and sisters or their
descendants, living at the time of his death, and to Edith Fo-
dell. And finally he appoints his wife, Eliza Miller, "sole ex-
ecutrix of this my last will and testament," and as such, "with
power and authority, to sell, dispose of and convey in fee sim-
ple, any, or all of my real estate, and change any investments of
my personal property as she shall deem most advantageous to
my estate."

It is argued on the part of the defendant that "the wording
of the will shows that the power was to end with the life of the
widow, for the words of the will are, "I direct that my said wife
shall not be required by any court, to give security, to secure
the interest of the person or persons entitled in remainder to
any part, or portion of my estate;" that "this clearly shows
that it was the intention of the testator to give only his execu-
tor power to sell, and, if not so sold, the power was to die with
her death; that remainder refers only to real estate, and the

testator intended the persons entitled to portions of his estate after the death of his widow to take the real estate remaining unsold; " that " a remainder is a remnant of an estate in lands or tenements, expectant upon a particular estate, created together with the same at one time.". And this is correct, in cases like those cited, where a power of sale is given with the express purpose of raising money to pay devisees, special legacies, etc. The power to sell was exhausted when there was enough sold and converted to accomplish such purpose.

In the case under consideration there is no such limitation. The testator says : " After the decease of my said wife, I give, devise and bequeath, the said residue and remainder of my estate, real, personal and mixed, unto all my brothers and sisters then living, and the issue and descendants of any of them then dead," etc., and, in Commonwealth v. Hackett, 102 Pa. 505, the Supreme Court say : " A testamentary clause, disposing of ' all the rest, residue and remainder of my estate,' will, in the absence of a contrary intention apparent in the will, pass residuary realty as well as personalty, and by virtue of the act of April 8, 1833, after acquired real estate will pass under such clause" in a will. And in Darlington's Case, 160 Pa. 70, cited by defendant, it is said that a conversion of real estate into personalty is worked when there is "such a blending of realty and personalty by the testator in his will as to show that he intended to create a fund out of both real and personal estate and to bequeath the same as money." Just such is the case here. The testator makes no devise of any portion of his real estate as such to any person named in his will, but blends his whole estate, " the whole of the rest, residue, and remainder of my estate, real, personal and mixed," into one mass, one fund for distribution, and distributes it, or rather orders it to be distributed as money, thus rendering it necessary that his real estate should be sold for the purposes of distribution, for the purpose of carrying out the testator's disposition of his estate.

In Ross v. Barclay, 18 Pa. 183, the Supreme Court, GIB-SON, C. J., held that by virtue and force of the act of February 24, 1834 (before cited), relating to executors and administrators, an " administrator with the will annexed " may execute a power to sell in order to bring the land into a course of administration, but not to execute a trust for a collateral pur-

pose; that the 67th section of the act puts an administrator with the will annexed on a footing with a surviving executor, but not on a footing with a testamentary trustee, and the rule, thus stated, has been in the main adhered to in subsequent decisions. In Gray v. Henderson et al., 71 Pa. 368, it is said that, by the act of February 24, 1834, sec. 12, it is enough if, in any part of the will, the intention be expressed, to confer a power of sale on executors; and the power is implied when the distribution and management of the fund arising from a sale is expressly confided to the executor, or when it is confounded by the testator in one common fund with the personalty (as here), although there be no express direction to the executor to distribute it. While in Waters v. Margerum, 60 Pa. 44, SHARSWOOD, J., held that the deed by the administrator d. b. n. conveyed no title, because the power to sell given by the will to the executors was not for the payment of debts, but for distribution among legatees and for investment; in Evans v. Chew, 71 Pa. 49, SHARSWOOD, J., delivering the opinion of the court of nisi prius, modified this decision somewhat by expressly deciding that administrators c. t. a. had all the power given to executors virtute officii; that the general power to sell will be presumed to be for the payment of debts, and that a power to sell for the purpose of distributing the proceeds amongst persons named in the will is a power belonging to the executor "virtute officii," as well where the power is discretionary, as where the direction is absolute. In view of the former dicta of Chief Justice GIBSON, and of what Justice SHARSWOOD admits to have been a slip on his part, and inasmuch as the opinion of Justice SHARSWOOD at nisi prius is adopted by the court, per curiam, in Evans v. Chew, it is interesting as well as highly important to this case to note the opinion of the court: "A general power to sell will of course be conclusively presumed to be for the payment of debts; for a purchaser is never required to call for or look into an account, or to demand an inventory of personalty or list of debts. Such was the power in Meredith's Estate, 1 Parsons 433. Mr. Binney's opinion, Hood on Executors, 241 and note. About the authority of an administrator with the will annexed in such a case there could be no question. A power also to sell for the purpose of distributing the proceeds amongst persons named or described in the will is a power which, it

seems equally clear, belongs to the executor virtute officii. This would seem to be the case without question where there is an absolute direction to sell, and not a mere discretionary power, for in that case the estate would be converted into money from the death of the testator; but the same rule, as it appears to me, applies where there is only a power. In the case of Keefer v. Schwartz, 47 Pa. 503, there was indeed an absolute direction, but it is not rested upon that ground in the opinion. Mr. Justice STRONG said: 'The executors were not made testamentary trustees of the property. They were directed to sell for distribution. Their powers and duties were official by virtue of their office.' Some difficulty appears to have arisen in the minds of counsel, from what was evidently merely a dictum of GIBSON, C. J., in Ross v. Barclay, that 'no statute of Pennsylvania empowers an administrator with the will annexed to execute a trust of land confided to an executor by title or name for any other purpose than to sell for payment of debts;' and his declaration in the same case that a power could not be exercised by such administrator 'to turn the land into money for the convenience of partition.' This last phrase is repeated in Waters v. Margerum. In both these cases the trust extended beyond the sale and distribution, virtute officii, to an investment; in short, a trust for a collateral purpose. The executors were, in both of these cases, testamentary trustees, and they were invested with power as such. These dicta were, therefore, entirely aside from the case. For myself I may say that I copied the phrase from Ross v. Barclay, as is often done, in the hurry of composition, and it passed without notice in consultation. I may have, and probably had in my mind, not a sale for the purpose of distribution, but, what is not uncommon in the country, a power to executors to make partition, with an ancillary power of sale and conveyance for that purpose."

It might, therefore, well be assumed that this case established in Pennsylvania the rule of law that a power to sell for the purpose of distributing the proceeds amongst persons named or described in a will is a power belonging to an executor virtute officii, and is transmitted to the administrator d. b. n. c. t. a.

In Lantz v. Boyer, 81 Pa. 325, the real estate was devised to the wife for life, and in case the wife should so desire, and the executors deem it for the best interests of wife and children, they were

authorized to sell the same.    The executors were discharged, and
letters of administration d. b. n. c. t. a. granted to Boyer.    SHARS-
WOOD, J., again delivering the opinion, the court held that "it may
now be considered as definitely settled that whenever a power is
given by will to executors to sell real estate with a view to the
distribution of the proceeds among legatees, such power belongs
to them virtute officii, and may be exercised by an administrator
de bonis non with the will annexed. . . . It seems equally clear
that it makes no difference whether the distribution is to be
immediate or upon the expiration of a certain period of time,
or upon the uncertain contingency of a life or lives.    In the
case before us, the life estate was given to the widow, and abso-
lute direction to the executrix to sell, if she should desire it,
and the proceeds of the sale to be invested in good real estate
security, the interest to be paid to the widow for her life, and
a part of the principal, if she should desire, to be invested in a
house for her use for life."

In that case the residue was to be distributed under the intes-
tate laws, and the wife's share, when her life estate should ex-
pire, would be a part of the residue.    The court says : " He
makes a common fund of his estate, real, personal and mixed,
and by whom is the distribution to be made ?    By his executors,
certainly, and that, virtute officii.    This duty of distribution
then devolved of necessity upon the administrator d. b. n. c. t. a.
If so, he must be entitled to receive and invest the fund, and
hold it so invested until that period of final distribution shall
arrive."    Upon this reasoning it was held that the administrator,
with the will annexed, had power to vest in the purchaser a
title to the real estate.    We might refer to other cases in fur-
ther illustration, but this seems to fit the case under considera-
tion in all material points with such great precision that we
forbear.

In this case Samuel Miller most unquestionably gave his
executrix power to sell all his real estate with a view to and for
the purpose of distribution.    He had no children.    His wife
was not to have, receive or take any portion of the corpus of
his estate for her use or benefit during life.    He gave to his
executrix full power and authority to sell, dispose of and con-
vey in fee simple any and all of his real estate, and change any
investments of his personal property, as she shall deem most

advantageous to her and to his estate; and for the purposes of distribution he blends his whole estate, the rest, residue and remainder, real, personal and mixed, into one fund, and directed distribution to be made at the decease of his wife, as directed by and to the persons named, or described, in his will. When his wife died, and the estate came to be distributed, his executrix was dead, and an administrator d. b. n. c. t. a. was, as we have seen, duly appointed. The power of sale was absolute, and belonged to the executrix virtute officii, and, therefore, may be properly and legally exercised, the real estate sold, the estate settled and distribution made as directed by the will, by the administrator d. b. n. c. t. a. under and by virtue of the provisions of the act of February 24, 1834.

The court being of opinion that under the said will of said Samuel Miller, deceased, and the grant of letters of administration d. b. n. c. t. a. to Joseph M. Potts, the said administrator had power under said will to sell said real estate, and to make a good and legal title to said defendant, Joseph P. Breneman, do now, in accordance with the provisions of the case stated, enter judgment in favor of plaintiff, in the sum of eleven hundred dollars ($1,100).

*Error assigned* was in entering judgment for plaintiff.

*J. W. Brown,* for appellant.—The administrator had no power to sell the real estate: Wilkinson v. Buist, 124 Pa. 253; Fidler v. Lash, 125 Pa. 87; Rapalje & Lawrence Law Dict. Remainder.

Where a testator gives power to his executors to sell his real estate, and the same is not done, the power to sell becomes inoperative, the land remains unconverted, and descends to the testator's heirs at law: Luffberry's App., 125 Pa. 513; Lehman's App., 105 Pa. 128; Peterson's App., 88 Pa. 397; Anewalt's App., 42 Pa. 414; Mitchell v. Railway, 165 Pa. 651; Darlington v. Darlington, 160 Pa. 65.

*W. U. Hensel,* with him *J. Hay Brown,* for appellee.—Where power is given by will to executors to sell real estate, with a view to the distribution of the proceeds among legatees, such power belongs to the executors virtute officii; Still's Est., 31

W. N. C. 252; 3 Rhone's Orphans' Court Practice, 1260; Jackman v. Delafield, 85 Pa. 381; Maus v. Maus, 80 Pa. 203; Lantz v. Boyer, 81 Pa. 325.

When lands are devised to executors to be sold or a power of sale is given them, an administrator de bonis non with the will annexed has the same power: Alabama 1886 Code, sec. 1864; Colorado 1891 Ann. Stats., sec. 4749; Connecticut 1888 G. S., sec. 554; Delaware 1874 R. C., c. 90, sec. 17; Georgia 1882 Code, sec. 2567; Indiana 1888 R. S. sec. 2365; Kansas 1889, G. S., sec. 2920; Maryland 1888 P. G. L., art. 93, sec. 81; Minnesota 1891 G. S., sec. 5674; Missouri 1889 R. S., sec. 136; North Carolina 1883 Code, sec. 1493; Ohio 1890 R. S., sec. 5980; Virginia 1887 Code, sec. 2663; West Virginia 1891 Code, c. 86, sec. 1.

A power of sale in a will may generally be executed by the administrator cum testamento annexo: Howell v. Sebring, 1 McCart. 84; Hester v. Hester, 2 Ired. Eq. 330; Kidwell v. Brummagim, 32 Cal. 436; Peebles v. Watts, 9 Dana, 102; Royer v. Meixel, 19 Pa. 240; Olwine's Appeal, 4 Watts & S. 492; Hassinger's Appeal, 10 Pa. 454; Robinson v. Ostendorff (S. C.), 16 S. E. Repr. 371; Farwell v. Jacobs, 4 Mass. 634; Elstner v. Fife, 32 Ohio, 358; Green v. Davidson, 4 Baxt. 488; Davis v. Hoover, 112 Ind. 423; Blakemore v. Kimmons, 8 Baxt. 470; Evans v. Chew, 71 Pa. 47; Cooke v. Platte, 51 N. Y. Super. Ct. 55; Woerner on Adm. sec. 339; Mott v. Ackerman, 92 N. Y. 539; Bingham v. Jones, 25 Hun, 6; Wenner v. Thornton, 98 Ill. 156.

A power to sell for the purpose of distributing the proceeds amongst persons named in the will is a power belonging to the executor virtute officii, as well where the power is discretionary as where the desertion is absolute: Ross. v. Barclay, 18 Pa. 183; Waters v. Margerum, 60 Pa. 44; Maus v. Maus, 80 Pa. 194; Lantz v. Boyer, 81 Pa. 325; Livingood v. Heffner, 21 W. N. C. 149.

Opinion by Mr. Justice Dean, July 15, 1897:

We have nothing to add to the able opinion of the learned court below vindicating his judgment on the case stated, except to do, what probably, he had no opportunity to do, distinguish the cases cited by appellant in the argument before this court,

from the one in hand. In Wilkinson v. Buist, 124 Pa. 253, this Court held, under the terms of that will, the power to sell ended with the life estate, because the testator plainly so intended. In Fidler et al. v. Lash, 125 Pa. 87, the sole purpose in creating the power to sell was to provide for the widow during her lifetime. Necessarily, the intention was, that it should end with her death. In Swift's Appeal, 87 Pa. 502, the fact, as found by the court, was, that enough realty had been sold to pay the devises; that for this purpose alone the power had been conferred, and when the purpose was accomplished the power was exhausted. There is, really, no conflict in these cases with those cited by the court. The direction that his wife should not be required to give security for the interests of the persons "entitled in remainder" and the words "bequeath the said residue and remainder of my estate" are not significant of a limitation of the power, in view of the whole will, and especially of the codicil. True, technically, a remainder is an estate in land, limited to take effect and to be enjoyed after another estate is determined; and such estate vests immediately on the death of the donor, to be enjoyed in possession after the determination of the particular estate. But the testator, manifestly, here used these technical words in the sense of "balance of," "what is left," or "what may remain."

The judgment is affirmed on the opinion of the court below.