## Kostenbader *versus* Spotts.

1. Judgment was entered against Tunis by warrant of attorney which contained "without stay of execution, exemption or extension." *Held*, that this was a waiver of an inquisition, and land bound by the judgment but not owned by the defendant in the judgment, might be sold under a fi. fa.: Per JUNKIN, P. J., *adopted by the Supreme Court.*

2. Tunis sold the land to Dundore, and afterwards it was sold under a fi. fa. on the judgment without inquisition. *Held*, under the maxim, *Communis error facit jus*, that the sale was valid.

3. One buying subject to liens, makes them his own debts. *Per* JUNKIN, P. J.

[Kostenbader v. Spotts.]

4. A purchaser cannot be compelled to accept a doubtful title, nor one which the court cannot warrant to him, the question being not whether the title is good, but whether it is clearly so. *Id.*

5. A title is doubtful where its condition invites litigation; a purchaser cannot be compelled to take it if he thereby exposes himself to a law-suit. *Id.*

6. When doubts are raised by extrinsic circumstances, which neither the purchaser nor the court can satisfactorily investigate for want of means to do so, the court will refuse its aid; when the means of inquiry are offered, and the result satisfactory, performance will be enforced. *Id.*

7. A possibility of a contest is not sufficient, it must be considerable and rational, such as would induce a prudent man to pause and hesitate, and as would produce a bonâ fide hesitation on the mind of the chancellor. *Id.*

8. Kimball v. Kelsey, 1 Barr 183; Wolf v. Payne, 11Casey 97, referred to.

January 25th 1876.     Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Union county*: No. 37, to January Term 1875.

This was an action of assumpsit, brought December 7th 1871, by Samuel Kostenbader against William Spotts, to recover back $1500, the hand-money under an article of agreement for the sale of certain real estate by defendant to the plaintiff, he alleging that the title tendered by defendant was defective.

The article of agreement was executed November 6th 1868; the defendant thereby binding himself to sell to the plaintiff the Great Western Hotel, in Buffalo township, Union county; the plaintiff in consideration agreeing to pay $8000, viz.: $1500 on the execution of the articles, $2500 on the 1st of April 1869, when possession was to be given, and the remainder in other instalments; upon the payment of the second instalment on the 1st of April 1869, and securing the other instalments, defendant was to make a deed in fee simple with general warranty. The plaintiff paid the $1500 at the execution of the articles.

The title of the defendant was derived as follows:—

The property sold consisted of about three acres; it was part of a large farm, formerly belonging to George Frederick, deceased, which was sold by order of the Orphans' Court for $9335.84; of these two-thirds were paid to the heirs of Frederick, and a mortgage for $3111.94 taken on the whole farm to secure the widow's dower. After this mortgage had been given, the hotel was erected on the three acres. The defendant became the owner of the whole tract, which at the time of the trial, it was testified was worth $15,000. By divers conveyances, the title of the premises in question, on and before October 1863, was in Thomas Tunis, the defendant still retaining the remainder. On that day, Tunis executed a note with warrant of attorney, to confess judgment to John Weightman for $976, payable in three years with interest, "without stay of execution, exemption or extension, under the Act of

June 6*th* 1836." On this note judgment was entered in the Court of Common Pleas of Union county, on the 21st of October 1863.

The clause, "without stay of execution," &c., was spread out on the appearance docket where the judgment was entered. On the 1st of April 1865, Tunis conveyed the premises to Jacob Dundore for $5000; the dower mortgage being still unsatisfied, and he agreeing to assume the Weightman judgment as part of the purchase-money.

A fi. fa. to September Term 1868, No. 5, was issued on this judgment; the sheriff levied on the property May 29th 1868, but held no inquisition, and sold it under the fi. fa. on the 20th of June 1868 to the defendant for $5200: the sheriff's deed to him was acknowledged September 24th 1868. No exception to these proceedings was taken by Tunis, Dundore or any one else, and the whole of the proceeds of the sheriff's sale were applied to the payment of Dundore's debts, including the judgment under which it was sold.

On the 1st of April 1869, plaintiff tendered the second instalment, $2500, to the defendant and demanded a deed; a deed was offered by defendant; plaintiff declined to accept it, alleging that the title was defective.

The foregoing facts appeared on the trial of the case, October 10th 1874, before Junkin, P. J., of the 41st district, who, after stating the facts, charged : * * *

"Under this state of facts, the questions to be decided are entirely of law and for the court.

"1. Was the expression 'without extension,' contained in judgment note given by Tunis to Weightman, under which the premises were sold to Spotts, and under which he derived his title, a waiver of inquisition? We think it was; as the word '*extension*' is the usual expression employed to show that on an inquisition the rents and profits will, within seven years, pay the liens, and the words 'extent' and 'extension,' or 'extended' occur in the 51st, 58th, 59th, and perhaps other sections of Act of June 1836, relating to executions (1 Bright Purd. 648, pl. 65–67), thus leaving no doubt as to the sense in which the expression is used. Then we accept the law as now settled by Hageman *v.* Salisbury, 24 P. F. Smith 280, that a waiver of inquisition in a judgment note or bond, is a part of the judgment, it being supposed that Hope *v.* Everhart, 20 P. F. Smith 231, and Buehler *v.* Rogers, 18 Id. 9, had determined the reverse, which they did not; the first simply deciding that the entry of judgment was the act of the prothonotary, and bound defendant whether of sound mind or not, and the waiver of inquisition was the act of defendant and not binding if of unsound mind; and the second case merely holding that levy and inquisition are not acts of record, but done by the sheriff *in pais*,

[Kostenbader *v.* Spotts.]

and if wanting, could be supplied by evidence, but if not so supplied, there would be no authority to sell.

" There was, therefore, authority in the sheriff, as against Tunis, the defendant in this judgment, to sell on the fi. fa. without inquisition.

" 2. Inasmuch as Tunis had parted with his title to Jacob Dundore, on the 1st of April 1865, after the entry of the judgment, but before the sheriff's sale, could the sale be made on the judgment against Tunis, without inquisition and notice thereof to Dunmore, the then owner of the fee? It is settled in Wolf *v.* Payne, 11 Casey 97, that a waiver of inquisition by a defendant, who has previously parted with his interest in the premises levied on, subject to the lien of the judgment, will not authorize a sale without inquisition; but in this case it must be observed that there was no waiver in the judgment; it was, on the contrary, an amicable waiver given by Wolf, the defendant in the judgment, *after* he had conveyed the premises to another, although given on a fi. fa. issued on a judgment confessed by Wolf *before* he conveyed. It does appear by the report of the case, whether or not Wolf's grantee had assumed the payment of the lien as part of his purchase-money. This decision is based on the 45th sect. of Act of 16th June 1836, 1 Bright. Purd. 647, pl. 56, which provides ' that the defendant in any execution, being at the time of issuing thereof the owner of such real estate, or the person owning such estate by title from him, may by writing filed in proper court, dispense with and waive an inquisition as aforesaid,' &c. But in the present case we have this element, to wit, that Dundore purchased subject to liens, and for the sake of clearness we will say subject to this particular judgment on which the sale was made, containing the waiver of extension, &c. When a man buys subject to liens, he in law makes such liens his own personal debts, because he has the value of them in his pocket, retained out of the price he was to pay; and having assumed payment he is, as between him and his vendor, *personally* liable: Blymire *v.* Boistle, 6 Watts 182; Crooks *v.* Douglas, 6 P. F. Smith 53; Woodward's Appeal, 2 Wright 322; Campbell *v.* Shrum, 3 Watts 60; Metzgar & Gernet's Appeal, 21 P. F. Smith 330. Then Dundore owed this very judgment as his own debt, and he owed it upon its terms, to wit, ' without extension.' This so completely connects Dundore with this judgment, that his relation to it is precisely what Tunis's, his vendor's, was; and it is not pretended that Tunis can complain of the want of an inquisition, or could, even had he remained owner; and as under the terms of sale by Tunis to Dundore the latter assumed the payment of this judgment, he is in no better situation to complain than his vendor, and if he cannot, no man in the world can; and Dundore being no person but Tunis himself, the conclusion is inevitable that the sale to Spotts without inquisition made a complete and valid title. The

30 P. F. SMITH—28

[Kostenbader *v.* Spotts.]

case of Kimball *v.* Kelsey, 1 Barr 183, is in some respects similar to the one before us. There Starkweather executed a judgment note to Kelsey, waiving inquisition, on 28th October 1837, and it was entered, and several fi. fas. issued, and finally, 20th January 1841, an alias was returned levied on the land in dispute, no inquisition, and a vend. exp., and on 10th March 1841 returned sold to Kelsey for $300, and sheriff's deed made 17th June 1841. On 26th February 1841 Starkweather, the defendant, conveyed the land levied on to Kimball; and the latter contended that Kelsey took no title for want of an inquisition ; but the Supreme Court did not even suspect that any question could be raised, and they there show that the Act of 16th June 1836 is only declaratory of what the practice had been.

"But the present case seems so clear, by reason of Dundore's relation to the judgment, that we will not pursue the question further.

"It must also be remembered that the entire proceeds of the sale were applied to the payment of Dundore's own debts, although this in itself would not prevent him from setting up the want of an inquest; but it aids the allegation and proof that the debts of record were assumed by him when he purchased from Tunis. We have thus shown that Spotts's title is good.

"3. Was this title merchantable, and such as a chancellor could assure to the vendee ?   This is a more difficult question, and must claim our candid consideration. The rule is that a purchaser cannot be compelled to accept a doubtful title, nor will a court compel him to take an estate which it cannot warrant to him ; and the question is not whether Spotts's title is *good*, but whether it is *clearly* so : Bumberger *v.* Clippinger, 5 W. & S. 311 ; Ludwick *v.* Huntzinger, Id. 51 ; Colwell *v.* Hamilton, 10 Watts 413 ; Speakman *v.* Forepaugh, 8 Wright 363 ; Swayne *v.* Lyon, 17 P. F. Smith 436.   These cases show that a title is regarded as doubtful where its condition invites litigation ; a purchaser will not be compelled to take it if thereby he becomes exposed to a lawsuit.

"But the case before us is not that of a vendor seeking to compel the vendee to accept and pay, but is the case of the vendee who, having paid a part, refused to accept and pay more, but sues to recover back what he has paid, as upon a rescinded contract. He is therefore the actor, and must show the title to have been such as he was not bound to accept.   The case is not quite so strong as it would be if the vendor sought to compel acceptance and payment ; he simply claims to keep what he got, but asks no more.

"Now it is manifest that the title tendered, to wit, the sheriff's deed to Spotts, founded on the judgment and execution thereon, presented a regular, clear title, and the doubt could be raised only by showing the sale from Tunis, the defendant in said judgment, to Dundore.   The question at first sight being whether Dundore,

the purchaser, was bound by the waiver of inquisition contained in the judgment; and then the next step was to discover upon what terms did Dundore buy? And an inquiry into this would have disclosed the fact that he had actually assumed the payment of that judgment, and thus having made the debt his own, a court could assure the title. This investigation was neither difficult nor unreasonable, and Kostenbader should have allowed time to Spotts to show the truth. When doubts are raised by extrinsic circumstances, which neither the purchaser nor the court can satisfactorily investigate for want of means to do so, the courts will refuse their aid; but when the means of inquiry are offered, and the result satisfactory, they will enforce performance. A threat, or even possibility of a contest, will not suffice to cast doubt on the title; it must, in the language of Lord Eldon, in Stapylton *v.* Scott, 16 Ves. 272, ' be *considerable and rational,* such as would and ought to induce a prudent man to pause and hesitate; not based on captious, frivolous and astute niceties, but such as produce real bonâ fide hesitation in the mind of the chancellor.'

"Suppose the case rested upon this alone—that the judgment showed a waiver of inquisition, a sale by Tunis to Dundore after entry of the judgment, would not this be a waiver by the *then* owner, and would not the purchaser be held affected by the record of that judgment? The contrary has not been held, notwithstanding Stilwell's case, 8 Phila. Rep. 178, where Judge Paxson discusses, but does not decide the question, resting his opinion on what was satisfactory to him, to wit, that the waiver did not appear on the judgment docket, and for that reason not notice to the subsequent vendee. But Kimball *v.* Kelsey, 1 Barr 186, and Hageman *v.* Salisberry, *supra,* seem quite clear in holding the waiver on the appearance docket sufficient, because the index or judgment docket is intended to guide the searcher to the entry on the former, and if not found in the index he need not look farther.

" 4. What was the effect of the lien on the property? It was a mortgage to secure a widow's interest—principal $3111.94, annual interest $186.71—and was spread over a farm worth $15,000, still retained by the vendor, the parcel sold to the plaintiff containing but three acres, with tavern stand erected thereon after mortgage was given. By the terms of the sale Kostenbader, the plaintiff, was to pay $8000; $1500 on agreement (and this he paid—now sues to recover it back); $2500 on 1st April 1869; $1000 on 1st April 1870; $2000 on 1st April 1871, and another $1000 would remain; so that he had $6500 in his hands to meet this $3111, even if the whole were cast on the few acres, which never could have happened, and the proportion to be borne by the land sold would not have reached $300. There was therefore no ground for rescission on account of encumbrances, and the vendor was not bound to remove them, unless he was put upon doing so by a bonâ fide demand of

[Kostenbader *v.* Spotts.]

the plaintiff for performance. No objection was made by plaintiff to comply on the score of this mortgage: Irvin *v.* Blakely, 17 P. F. Smith 29. It is impossible to believe that there was anything serious in the objection on account of this mortgage. No opportunity was given Spotts to procure a release, or do anything towards carrying out his contract; the $2500 due 1st April 1869 were tendered to him, and he offered his deed, and vendee objected to the title, and then sued as upon a rescinded contract. [The burden is now upon him to show a defect of title, such as rendered it unmarketable; and this we instruct you he has failed to do, and you will find for the defendant."]

The verdict was for the defendant. The plaintiff took a writ of error, and, amongst others, assigned the part of the charge in brackets for error.

*G. F. Miller*, for plaintiff in error.—To deprive a party of his privilege of an inquest, the language must be clear and explicit: O'Nail *v.* Craig, 6 P. F. Smith 161; Stillwell's Estate, 8 Phila. R. 178. A waiver in a warrant to confess judgment is no part of the judgment: Hope *v.* Everhart, 20 P. F. Smith 231. To enable the defendant to waive inquisition he must be the owner of the land when the writ issues: Pepper *v.* Copeland, 2 Miles 419; Baird *v.* Lent, 8 Watts 422; Haden *v.* Clark, 2 Grant 107; McLaughlin *v.* Shields, 2 Jones 289; Wolfe *v.* Payne, 11 Casey 97; St. Bartholomew's Ch. *v.* Wood, 11 P. F. Smith 102. A title will not be forced on a purchaser unless so free from difficulty that another purchaser should be unable to raise any question, which, to a chancellor, should appear so doubtful that a title ought not to be enforced: Dalzell *v.* Crawford, 1 Parsons's R. 37; Nicol *v.* Carr, 11 Casey 382; Speakman *v.* Forepaugh, 8 Wright 371; Swayne *v.* Lyon, 17 P. F. Smith 439. As to the encumbrance of widow's dower, he cited: Withers *v.* Baird, 7 Watts 227; Nicol *v.* Carr, *supra*.

*W. Van Geser* and *J. M. Linn* (with whom was *A. Dill*), for defendant in error.—Dundore retained the amount of this judgment, out of the purchase-money, with the express purpose of paying it; and, by the agreement he made the debt his own: Blank *v.* German, 5 W. & S. 36; Campbell *v.* Shrum, 3 Watts 60; Metzgar & Gernet's Appeal, 21 P. F. Smith 330; Kimball *v.* Kelsey, 1 Barr 183; Blymire *v.* Boistle, 6 Watts 182; Woodward's Appeal, 2 Wright 322; Crooks *v.* Douglass, 6 P. F. Smith 53. If the words *without extension* amount to a waiver of inquisition then the waiver constituted a part of the judgment: Hageman *v.* Salisberry, 24 P. F. Smith 280. But it would be an idle and useless stipulation if the defendant could, by a sale of his property,

[Kostenbader *v.* Spotts.]

at any time deprive the plaintiff in the judgment of important advantages stipulated for: Billmeyer *v.* Evans, 4 Wright 324.

Mr. Justice GORDON delivered the opinion of the court, October 9th 1876.

We are disposed to adopt, without comment, the charge of the learned court below, except so far as it relates to the effect of the waiver of inquisition, as contained in the confession of judgment of Tunis to Whiteman, on the 20th October 1863. Our doubt is, whether under the letter of the 45th section of the Act of June 16th 1836, this waiver was binding upon the property in the hands of Dundore, to whom it was subsequently sold by Tunis. The language would seem, at first blush, to put the power of waiver exclusively in the hands of him who owned the lands at the time of the issuing of the execution, thus attaching this right to the land rather than to the person of the debtor. Certainly the debtor could not waive the privilege of extent after the property, bound by the judgment, had passed to his vendee: Wolfe *v.* Payne, 11 Casey 97. In such case, however, the debtor having disposed of the property, is but a stranger, and has no right in it that he can waive. As against one purchasing after the test of the fi. fa., but before sale, such waiver has been held to be good: Kimball *v.* Kelsey, 1 Barr 183. In this case it seems to be taken for granted that the waiver, as contained in the judgment note, being effective, as against the debtor, bound the property co-extensively with the lien of the judgment, so no point was made as to its effect upon a purchase subsequent to its entry. The argument is, that the provisions relating to the inquisition and extent being intended for the benefit of the debtor, his waiver of such right, thus vested in himself, could not be questioned by any third party. For my own part, I think it is hardly possible to evade the force of this argument; for it is not to be controverted but that the statute does intend these dilatory provisions for the benefit of the debtor alone, and it is but natural to suppose that if he chooses to contract for their release he should have the power so to do. Again, the contrary theory involves the anomaly that one may dispose of this right for a valuable consideration, and then by his own act annul the contract by which such disposition was made. The creditor, also, is entitled to some consideration ; the waiver is part of the obligation for which he has paid his money or goods, and he ought not to be deprived of a valuable part of his contract on any doubtful construction of the statute.

The majority of this court, however, are not disposed to adopt this reasoning, but put the affirmance of this judgment on the ground of *communis error* alone. In many parts of the Commonwealth it has never been doubted but that the waiver in a judgment is co-extensive with the lien, and upon this theory many

[Kostenbader *v.* Spotts.]

sheriff's sales have been made, and many titles acquired; we are, therefore, not inclined by a technical exposition of the act to unsettle rights honestly acquired and upon which many persons have rested for years.                              Judgment affirmed.