## Stone v. Carter, Appellant (No. 1).

*Vendor and vendee—Marketable title—Doubtful title—Right of vendee to recover purchase money.*

1. If a vendor has covenanted to convey a marketable title, and when the time arrives for carrying out his agreement he is unable to do so, the vendee has a right to rescind and recover back the portion of money he has paid. In such a case the same considerations enter into the determination of the question whether the title is marketable as in the case of an action by the vendor to recover the unpaid purchase money. A title is not marketable where it exposes the party holding it to litigation.

2. In an action by a vendee to recover a portion of the purchase money paid for the land the plaintiff is entitled to recover where the question of title cannot be definitely settled in the action, as against the interests of certain minors.

Argued April 27, 1911. Appeal, No. 106, April T., 1911, by defendant, from judgment of C. P. Fayette Co., June T., 1909, No. 597, for plaintiff on case stated in suit of William A. Stone, alias W. A. Stone, v. Retta E. Carter. Before Rice, P. J., Henderson, Head, Beaver and Porter, JJ. Affirmed.

Case stated to determine why the plaintiff should recover a portion of the purchase money paid under articles of agreement for the sale of land.

Van Swearingen, J., filed the following opinion:

This matter is before the court on a case stated. On March 26, 1907, the defendant, Retta E. Carter, and her husband, C. C. Carter, entered into an agreement in writing with the plaintiff wherein the defendant agreed to sell to the plaintiff all the undivided one-seventh of a certain tract of land situate in Jefferson township, Fayette county, known as the Eli J. Baily farm, containing about 185 acres, and agreed to convey the same to the plaintiff within sixty days from the date of the agreement by good

and lawful deed in fee simple, free of all incumbrances, with covenants of general warranty, together with an abstract of title showing a good and marketable title to the same. According to the conditions of the contract the plaintiff. paid to the defendant $1,000 of the purchase money upon the execution of the agreement. On June 26, 1907, the defendant and her husband executed and tendered to the plaintiff a deed for the undivided one-seventh of said land, which. deed was in due form and sufficient to convey the title in fee, if such title was then vested in the defendant. The defendant at the same time delivered to the plaintiff for examination an abstract of title to said land which correctly exhibited the record title.

Title in fee simple to this and other lands was vested previously in Eli J. Baily, who, by his will dated March 20, 1891, and since his death duly proved and of record, made the following devise of this land: "Item second: I give and bequeath to my daughter, Mary Baily English, the Breckenridge farm on which she now lives; also the Alfree farm; also the Worldley farm. . . . And I do now hereby require and I do order that the portion bequeathed to my daughter, Mary Baily English, be and remain for her benefit during her natural life and for the maintenance and education of her children, and after her death and the youngest child becoming twenty-one years of age, they, the said children, may dispose of the said farms as they see proper, but dividing share and share alike." Mary Baily English died July 27, 1905, intestate, leaving seven children, one of whom is the defendant, and two of whom at the date of the tender of said deed were under twenty-one years of age. The plaintiff refused to accept said deed and to make payment of the amount of the purchase money due upon the delivery of the deed and to execute the mortgage required by the contract to secure the balance of the purchase money, alleging that a good and marketable title was not thereby conveyed to him and could not be conveyed to him during the minority of any of the children of Mary Baily English,

deceased, and demanded repayment by the defendant of the $1,000 paid by the plaintiff on the execution of the agreement, which demand was refused by the defendant, and this action was instituted to recover the money so paid by the plaintiff.

Some of the other children of Mary Baily English, who were of age, joined in the execution of said agreement and said deed for the sale of their interests in said land, but that fact has no effect upon the question now at issue between the plaintiff and defendant in this case.

The parties agree that if the court shall be of opinion that a good and marketable title could not be conveyed by the defendant for an undivided one-seventh of said land in fee, free of all incumbrances, during the minority of any of the children of Mary Baily English, deceased, judgment shall be entered for the plaintiff for $1,000, with interest from June 26, 1907; otherwise judgment shall be entered for the defendant.

It is urged by the defendant that under this will Mary Baily English took an estate in fee in this land and that her children took title by descent from her, she having died intestate. It is claimed that any of the children who were of age could have conveyed their undivided shares in the land at any time after the death of their mother. This is on the theory that the latter clause of the will above quoted is but an attempted restriction on the alienation of the fee which it is claimed was given to Mary Baily English by the clause of the will first quoted, the rule being that where a will gives property by words which primarily import a fee, but adds restrictions inconsistent therewith, the question to be determined is whether the intent was to give a lesser estate, or to impose restraints upon the estate in fee: Allen v. Hirlinger, 219 Pa. 56. Even on the theory that Mary Baily English took but a life estate in the land it is urged by the defendant that the will gave the children the same rights they would have had if she had owned the land in fee, it being claimed that even if the will be construed as prohibiting

an alienation of the land by the children until after the youngest child becomes of age, such restraint of alienation, although but partial, is void, the same as a general restraint is void. It is conceded that in a number of Pennsylvania authorities it has been said that while a general restriction of alienation on an estate in fee is void upon the principle that a power of alienation is necessarily and inseparably incident to an estate in fee and that conditions repugnant to the estate to which they are annexed bind not, a partial restraint such as of alienation to a particular person or during a limited time is valid because not inconsistent with a reasonable enjoyment of the fee: McWilliams v. Nisly, 2 S. & R. 507; McCullough v. Gilmore, 11 Pa. 370; Jauretche v. Proctor, 48 Pa. 466; Yost v. Insurance Co., 179 Pa. 381. But it is argued by counsel for the defendant that the assertion in the Pennsylvania cases that a partial restraint of alienation is valid is but dictum, because in none of the cases where such assertion is made was the question of the validity of a partial restraint under consideration, and that when the question comes squarely before the Supreme Court for decision it will be held that any restraint of alienation, either general or partial, is void, as held by many authorities outside of this state, citing Foulke on Rules Against Perpetuities, Restraints on Alienation and Restraints on Enjoyment, ch. 9, pp. 107–121. Attention is called by defendant's counsel to the fact that the will contains no express prohibition against alienation of the land by the children until after the youngest child becomes twenty-one years of age, and it is contended that a partial restraint, even if otherwise valid, cannot exist by implication, citing Sanders v. Mamolen, 213 Pa. 359, where it was said that "as a restraint of alienation on the grant of a fee is against the general rule of law it must be construed strictly," and insisting that a strict construction of an implied restraint would be anomalous. The question is raised by the plaintiff as to whether the portion of the will quoted does not constitute an executory devise to such

of the children of Mary Baily English as may be living "after her death and the youngest child becoming twenty-one years of age." Plaintiff, in this view of the case, alleges it to be a fair question whether the remainder will have vested in any of the children until the time arrives when Mary Baily English shall be dead and the youngest child shall have become twenty-one years of age. If not, and the defendant should die before the youngest child becomes of age, plaintiff questions whether he would have taken anything under the deed tendered, if it had been accepted, holding in doubt whether the defendant would have been in the class to take under the will. But if so, then it is contended by the plaintiff that the period of vesting.in possession and the right of alienation were postponed until the youngest child shall have become of age, citing Bonaffon's Estate, 16 Phila. 345. It is doubted by the plaintiff whether he could maintain an action of partition for possession under the deed tendered until after the youngest child becomes twenty-one years of age, partition being an action to obtain possession and not to test title, citing Seiders v. Giles, 141 Pa. 93, and it is contended that if he could not have the possession or beneficial enjoyment of the land he would not be getting a present "estate in fee simple, free of all incumbrances."

It is neither necessary nor advisable in this case that we should decide all or any of these questions. The very presence of such questions determines the case in favor of the plaintiff. The rule of law is that to be marketable a title must be good beyond a reasonable doubt. In Swayne v. Lyon, 67 Pa. 436, it was said by Mr. Justice SHARS-WOOD: "It has been well and wisely settled that under a contract for the sale of real estate, the vendee has the right not merely to have conveyed to him a good but an indubitable title. Only such a title is deemed marketable; for otherwise the purchaser may be buying a lawsuit, which will be a very serious loss to him both in time and money, even if he ultimately succeeds. Hence it has been often held that a title is not marketable where it exposes

the party holding it to litigation." This language has been quoted many times in later cases. In Holmes v. Woods, 168 Pa. 530, Mr. Justice McCollum said: "A doubtful title or a title which exposes the holder of it to litigation is not marketable, and the rule in equity is that a purchaser will not be compelled to accept it." Although this action is in assumpsit the equitable principles involved are the same as though it were a bill in equity by the defendant for specific performance of this contract. "A decree for specific performance is of grace, not of right. It will never be made in favor of a vendor unless he is able to offer a title marketable beyond a reasonable doubt:" Mitchell v. Steinmetz, 97 Pa. 251. "A marketable title is one of such character as should assure to the vendee the quiet and peaceable enjoyment of the property, and one which is free from incumbrance:" Barnard v. Brown, 112 Mich. 452 (70 N. W. Repr. 1038; 67 Am. St. Rep. 432). "A doubtful title which a purchaser will not be compelled to accept is not only a title upon which the court entertains doubts, but includes also a title which, although the court has a favorable opinion of it, yet may reasonably and fairly be questioned in the opinion of other competent persons; for the court has no means of binding the question as against adverse claimants, or of indemnifying the purchaser, if its own opinion in favor of the title should turn out not to be well founded:" Street v. French, 147 Ill. 342 (35 N. E. Repr. 814). "A vendee of real estate who is entitled under his contract to receive a marketable title to the premises, is under no obligation to take a title which, even if it might be finally determined to be good, is in a condition to involve him in litigation to establish or secure it:" Srolovitz v. Margulis, 35 Pa. Superior Ct. 252. "The question is not whether the title is good, but whether it is clearly so:" Kostenbader v. Spotts, 80 Pa. 430. "A marketable title means one that involves no considerable or rational doubt either as to matter of law or fact:" Nicol v. Carr, 35 Pa. 381.

We are of opinion that the defendant cannot convey to the plaintiff a good and marketable title to the undivided one-seventh of this land during the minority of any of the children of Mary Baily English, a title that is indubitable, one that is good beyond a reasonable doubt and that will not expose the holder of it to litigation. The questions arising upon the case stated are important and not free from difficulty. They raise such doubts respecting the title as ought to induce a prudent man to hesitate in accepting it. We are firmly convinced that the plaintiff ought not to be compelled to pay for a title so burdened.

And now, November 15, 1910, after argument by counsel, and upon due consideration, and for the reasons set forth in the opinion herewith filed, it is ordered that judgment be entered in favor of the plaintiff and against the defendant for the sum of $1,000, with interest from June 26, 1907.

*Error assigned* was in entering judgment for plaintiff on case stated.

*W. J. Sturgis*, with him *E. H. Reppert* and *S. J. Morrow*, for appellant.—A title by possession is a marketable title, and has been frequently so decided to be: Pratt v. Eby, 67 Pa. 396; Dallmeyer v. Ferguson, 198 Pa. 288; Westfall v. Washlagel, 200 Pa. 181; Dorff v. Schmunk, 197 Pa. 298; Allen v. Hirlinger, 219 Pa. 56; Murray v. Ellis, 112 Pa. 485.

Under our act of 1833, the devise to all of the children of Eli J. Baily, vested in them a fee, as effectually as could have been done by the use of the word "heirs." It would therefore be "exceedingly improper in any court to endeavor to give effect to the restraint upon alienation by changing the character of the estate to a life estate, with a remainder annexed to it, or with an executory devise over: McWilliams v. Nisly, 2 S. & R. 507; Jauretche v. Proctor, 48 Pa. 466; Yost v. Ins. Co., 179 Pa. 381; Sanders v. Mamolen, 213 Pa. 359.

To put a strict construction upon an implied restraint

would, indeed, be anomalous. In any event the attempt
to restrain the alienation of a fee, even partially, is repug-
nant to the nature of the estate, and cannot with con-
sistency be held. We are mindful of the fact that it has
been said in several of our cases that a partial restriction
is good, but in all those cases the statement is obiter
dicta. In no case has the doctrine been announced where
a partial restriction was under consideration: Jauretche
v. Proctor, 48 Pa. 466; Yost v. Ins. Co., 179 Pa. 381;
McWilliams v. Nisly, 2 S. & R. 507; McCullough v. Gil-
more, 11 Pa. 370; Huber v. Hamilton, 211 Pa. 289;
Naglee's App., 33 Pa. 89; McIntyre v. McIntyre, 123
Pa. 329.

*H. L. Robinson*, of *Robinson & McKean*, for appellee.—
An action of covenant upon articles of agreement for the
sale of land, to recover the purchase money, is in effect
an equitable proceeding to compel specific performance
of the contract, and is governed by the same equitable
principles: Nicol v. Carr, 35 Pa. 381; Swayne v. Lyon,
67 Pa. 436; Holmes v. Woods, 168 Pa. 530.

A doubtful title which a purchaser will not be com-
pelled to accept is not only a title upon which the court
entertains doubts, but includes also a title which, though
the court has a favorable opinion of it, yet may reasonably
and fairly be questioned, in the opinion of other compe-
tent persons: Street v. French, 147 Ill. 342 (35 N. E.
Repr. 814); Barnard v. Brown, 112 Mich. 452 (70 N. W.
Repr. 1038; 67 Am. St. Rep. 432); Gregory v. Christian,
42 Minn. 304 (44 N. W. Repr. 202); Moore v. Williams,
115 N. Y. 586 (22 N. E. Repr. 233); Vought v. Williams,
120 N. Y. 253 (24 N. R. Repr. 195); Simon v. Vander-
veer, 155 N. Y. 377 (49 N. E. Repr. 1043).

And a fee which is given in the first part of a will may
prove to be so restrained by subsequent words as to re-
duce it to a life estate: Urich's App., 86 Pa. 386; Livezey's
App., 106 Pa. 201; Oyster v. Knull, 137 Pa. 448; Good v.
Fichthorn, 144 Pa. 287; Allen v. Hirlinger, 219 Pa. 56.

The estate of Mary Baily English is distinctly limited for her life. The remainder, if it be such, is to a class, her children: Todd's Est., 33 Pa. Superior Ct. 117.

Without the immediate right of possession, the vendee would not be getting a "good title in fee simple," what his agreement called for.

OPINION BY RICE, P. J., October 9, 1911:

The parties stipulated, in the case stated, that if the court should be of opinion that a good and marketable title in fee simple, free of all incumbrances, to an undivided one-seventh of the land described, could not be conveyed by defendant during the minority of any of the children of Mary Bailey English, judgment should be entered for plaintiff for $1,000, the amount of the down payment he had made at the execution of the contract between him and the defendant, otherwise judgment should be entered for the defendant for costs. Mary Bailey English was the daughter of Eli J. Bailey, in whom the title to this and other lands was vested at the time of his death. The will of Eli J. Bailey contained this devise: "Item Second. I give and bequeath to my daughter Mary Bailey English the Breckenridge farm on which she now lives also the Alfree farm also the Worldley farm also ten shares of stock in the People's Nat. Bank, Pittsburg." Then, after gifts to others, this clause occurs: "And I do hereby require and do order that the portion bequeathed my daughter Mary Bailey English be and remain for her benefit during her natural life and for the maintenance and education of her children, and after her death and the youngest child becoming twenty-one years of age they, the said children, may dispose of the said farms as they see proper, but dividing share and share alike." Mary Bailey English died in 1905, intestate, and left seven children, the defendant being one. Two of her children were, at the date of the tender of the deed under the contract between the plaintiff and the defendant, under the age of twenty-one years. The learned judge, without de-

ciding the question whether the defendant could convey a good title in fee simple, free of all incumbrances, during the minority of any of the children of Mary Bailey English, and expressly withholding expression of opinion upon that question, held that it was involved in such doubt as rendered the title unmarketable, and, therefore, entered judgment for the plaintiff.

It will be observed that no questions of fact are involved, and that the question whether the defendant had a good title in fee simple, free of all incumbrances, at the time she tendered the deed, is purely one of law, depending exclusively upon the proper construction of the above-quoted provisions of the will of Eli J. Bailey. It is argued by appellant's counsel that, this being so, it was incumbent on the court to determine the question of law and enter judgment for the defendant, if the question should be determined in the affirmative. In Kostenbader v. Spotts, 80 Pa. 430, the trial judge drew a distinction between an action to recover the purchase money, which is treated as governed by the same equitable principles as a bill in equity for specific performance, and an action brought by the vendee to recover back the portion of purchase money that he has paid. He says: "But the case before us is not that of a vendor seeking to compel the vendee to accept and pay, but is the case of the vendee who, having paid a part, refused to accept and pay more, but sues to recover back what he has paid, as upon a rescinded contract. He is therefore the actor, and must show the title to have been such as he was not bound to accept. The case is not quite so strong as it would be if the vendor sought to compel acceptance and payment; he simply claims to keep what he got, but asks no more." Does this distinction apply where the express agreement is to convey, not only a good, but a marketable title? Is it not sufficient, even in an action by the vendee to recover back the part of the purchase money he has paid, for him to show that the title is not marketable within the definition of that term as established by the decisions?

We do not find this precise question extensively discussed in any of the cases that have come to our notice, but the case of Herman v. Somers, 158 Pa. 424, implies an affirmative answer to it. There, the action was to recover back hand money paid on a contract under which the property was "to be free from all liens and incumbrances," and the hand money was "to be refunded if title should not prove good on examination of records or cannot be made good." In affirming judgment for the plaintiff, the court said: "This is equivalent to a covenant to convey a good marketable title. In equity a marketable title is one in which there is no doubt involved, either as to matter of law or fact: Dalzell v. Crawford, 1 Parsons' Equity Cases, 37; Nicol v. Carr, 35 Pa. 381; Swayne v. Lyon, 67 Pa. 436. In Speakman v. Forepaugh, 44 Pa. 363, it was said: 'Every title is doubtful which invites or exposes the party holding it to litigation. If there be color of outstanding title which may prove substantial—though there is not enough in evidence to enable the chancellor to say so—a purchaser will not be held to take it and encounter the hazard of litigation.'" The pertinency of this decision to the question under consideration consists in this, that the trial judge had instructed the jury, in effect, that it was sufficient, to entitle the plaintiff to recover, to show that the title was doubtful, either in matter of law or fact, and that this instruction was held not to be erroneous. In Holmes v. Woods, 168 Pa. 530, the action was by the vendor to recover balance of purchase money, and it was stipulated, in the case stated, that if the title was good and marketable judgment should be entered for the plaintiff for the balance claimed, but, if not, then should be entered for the defendant for the amount he had paid. Judgment for the defendant was affirmed, thus impliedly recognizing his right, even if he were the actor, to recover back the amount he had paid, if the vendor could not convey a marketable title. And it will be noticed, upon perusal of the opinion of Justice McCollum, that the decision was put upon the ground

that the title was doubtful and unmarketable, not upon the ground that it was not a good title. He says: "The questions arising upon the case stated are important and not free from difficulty. They raise such doubts respecting the title as ought to induce a prudent man to hesitate in accepting it. As was said in Nicol v. Carr, 35 Pa. 381, we do not enter into them, nor indicate any opinion how they ought to be decided, but we hold it as a very clear conviction that the defendant ought not to be compelled to pay for a title burdened by them." So, in Srolovitz v. Margulis, 35 Pa. Superior Ct. 252, a judgment in favor of the plaintiff, in an action to recover back the hand money, was affirmed upon the principle thus stated: "A vendee of real estate, who was entitled under his contract to receive a marketable title, is under no obligation to take a title which, even if it might be finally determined to be good, is in a condition to involve him in litigation to establish or secure it." Other precedents need not be sought, for it seems clear, upon principle, that if the vendor has covenanted to convey a marketable title, and when the time arrives for carrying out his agreement he is unable to do so, the vendee has a right to rescind and recover back the portion of money he has paid. In such a case the same considerations enter into the determination of the question whether the title is marketable as in the case of an action by the vendor to recover the unpaid purchase money. See Brokaw v. Duffy, 165 N. Y. 391. The general doctrine as to the marketability of a title was clearly stated by SHARSWOOD, J., as follows: "It has been well and wisely settled that under a contract for the sale of real estate, the vendee has the right not merely to have conveyed to him a good but an indubitable title. Only such a title is deemed marketable; for otherwise the purchaser may be buying a lawsuit, which will be a very serious loss to him both of time and money, even if he ultimately succeeds. Hence it has been often held that a title is not marketable where it exposes the party holding it to litigation:" Swayne v. Lyon, 67 Pa. 436. The

doubts that will render a title unmarketable are not "doubts made up for the occasion—doubts based on captious, frivolous, astute niceties, but such as would and ought to induce a prudent man to pause and hesitate in accepting a title affected by them:" Nicol v. Carr, 35 Pa. 381. Dallmeyer v. Ferguson, 198 Pa. 288, is a case where it was held that a bare and remote possibility of an outstanding title was not sufficient to make a title under possession for seventy-two years so doubtful as to be unmarketable. Westfall v. Washlagel, 200 Pa. 181, was decided upon similar grounds. And in Pratt v. Eby, 67 Pa. 396, it was held that a title depending on the bar of the statute of limitation may be a marketable title which a purchaser would be compelled to accept, provided it clearly appears that the entry of the real owner or owners is barred. But none of the Pennsylvania cases hold that the doubt that will render a title unmarketable must necessarily be as to matter of fact. The term means, as has been said repeatedly, a title that involves no considerable or rational doubt, "either as to matter of law or fact." The reason for including both is plain when it is considered that where the question, whether it be of fact or of law, involves the determination of the rights of others, the decision of the question in a suit between a vendor and vendee will not preclude those others from afterwards litigating it. In Pratt v. Eby, just cited, one of the questions was whether the title was incumbered by a mortgage, and the decision of this question depended upon the determination of the question whether a mortgage is within the expression "other charges" in the seventh section of the act of April 27, 1855, P. L. 368. Upon that question, which it will be observed was purely one of law, the judges of the Supreme Court were divided in opinion, which, of itself, the court said, was a sufficient reason for not forcing the title upon the purchaser. "It is a great, though perhaps a common mistake, to suppose that a doubtful title can be made marketable by an opinion of a court on a case stated between vendor and vendee. We

have not the heirs of the Rev. Robert Graham before us as parties in this action, and their rights cannot be concluded by any judgment we can give." The importance of this consideration, namely, the inconclusiveness of the judgment upon the rights of others not before the court, is clearly brought out in Bumberger v. Clippinger, 5 W. & S. 311, 315; Swayne v. Lyon, 67 Pa. 436; Herzberg v. Irwin, 92 Pa. 48; Brokaw v. Duffy, 165 N. Y. 391; and many other cases. In the last cited case it was said: A title open to a reasonable doubt is not a marketable title. The court cannot make it such by passing upon an objection depending on a disputed question of fact or a doubtful question of law, in the absence of the party in whom the disputed right was vested. He would not be bound by the adjudication, and could raise the same question in a new proceeding. The cloud on the purchaser's title would remain, although the court undertook to decide the fact or the law, whatever moral weight the decision might have. A title is not marketable when it exposes the party holding it to litigation.

It remains to consider whether the questions of law involved in the construction of the will of Eli J. Bailey are so doubtful as to render the title unmarketable, within the meaning of that term established by the foregoing and other decisions. These questions are quite fully and carefully stated in the opinion filed by the learned judge of the court below, and are summarized by the appellee's counsel as follows: 1. What was the nature of the provision for Mrs. English's children, and when would their estate vest? 2. Would the vendee of any of these children be entitled to possession of an undivided interest, as tenant in common, upon the delivery of a deed before the youngest child became twenty-one? 3. Would the purchaser of the interest of one of these children have the right to maintain partition before the youngest child became twenty-one? We cannot say that these questions do not fairly arise under the will. Nor can we say that all of them are so free from doubt that reasonable men might

not hold different opinions regarding them. It is to be borne in mind, as was said by SHARSWOOD, C. J., that "every will is to be construed from its four corners to arrive at the true intention of the testator. Decisions upon other wills may assist but cannot control the construction:" Fox's App., 99 Pa. 382. "This," it was said in Tyson's Est., 191 Pa. 218, "is but one of the hundreds of expressions of the cardinal rule in the interpretation of wills, to find the testator's intent, and by that is meant his actual, personal, individual intent, not a mere presumptive conventional intent inferred from the use of a set phrase or a familiar form of words." There would be no difficulty in determining the intent of Eli J. Bailey in making the devise heretofore quoted, were it not for the provisions of the second paragraph. But those provisions do certainly raise a very serious question as to what was his actual, personal intent. It does not seem to us that the doubt raised against the construction contended for by the appellant is fanciful or unreasonable. It cannot be settled definitely in this action as against the other children of Mary Bailey English, especially the minor children. When they arrive at majority they will have the right to contest the title of the plaintiff, even if we should decide the present case in the defendant's favor. And there is very serious question whether in the meantime the plaintiff, by accepting a deed from the defendant, would be in position to have one-seventh of the land set apart to him in severalty. There is, then, the important question argued by appellant's counsel, that the words of the second clause of the devise amount to a restraint upon alienation which should be declared void. As was said in Holmes v. Woods, we do not enter into them, nor indicate any opinion how they ought to be decided, but we hold it as a very clear conviction that the defendant ought not to be compelled to pay for a title burdened by them. Nor ought he to be compelled to forfeit the portion of the purchase money that he has paid upon the defendant's agreement to convey to him, not

only a good but a marketable title free of all incumbrances. We have carefully examined and considered all of the cases bearing upon this point which are cited in the able brief of appellant's counsel, and are unable to find that they are in conflict with the foregoing conclusion.

The judgment is affirmed.