## McCloskey, Appellant, *v.* Timmons.

*Vendor and vendee—Marketable title—Doubtful title.*

1. If a vendor has covenanted to convey a marketable title and, when the time arrives for carrying out his agreement, he is unable to do so, the vendee has the right to rescind and recover back the portion of the money which he has paid on the purchase price. A title is not marketable which exposes the party holding it to litigation.

2. In an action by a vendor to recover the purchase price alleged to be due on a contract for the sale of real estate, which called for a good marketable title, a verdict is properly rendered in favor of the defendant, where the question of title could not be definitely settled as against the interests of certain minors.

Argued October 7, 1919. Appeal, No. 82, Oct. T., 1919, by plaintiff, from judgment of C. P. No. 5, Phila. Co., Sept. T., 1915, No. 3277, in favor of defendant in suit tried by the court without a jury in the case of Alfred C. McCloskey, administrator c. t. a. of the estate of Mary J. McCloskey, deceased, v. Edward P. Timmons. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER and KELLER, JJ. Affirmed.

Assumpsit for purchase price of real estate. Before MONAGHAN, J., without a jury.

The facts are stated in the opinion of the Superior Court.

The court entered judgment for defendant for $228.50. Plaintiff appealed.

*Errors assigned* were various findings of fact and conclusions of law and the judgment of the court.

12, (1920).]    Arguments—Opinion of the Court.

*Richard F. McSorley,* and with him *Abram S. Ashbridge, Jr.,* for appellant.—The power of the executor passed to the administrator c. t. a. to sell the property in question: Tarrance v. Reuther, 185 Pa. 279; Potts v. Breneman, 182 Pa. 295; Jackman v. Delafield, 85 Pa. 381; Lance v. Boyer, 81 Pa. 325; Evans v. Chew, 71 Pa. 47; Keefer v. Schwartz, 47 Pa. 503.

The approval of the sale by the guardians of the minor heirs was valid: Gray v. Howell, 205 Pa. 211; DeArmit v. Milnor, 20 Pa. Superior Ct. 369.

*Edward P. Bliss,* for appellee.—A title is not marketable when it exposes the parties holding it to litigation: Stobert v. Smith, 184 Pa. 34; Murray v. Ellis, 112 Pa. 485; Reighard's Est., 192 Pa. 108; Church v. Clark, 47 Pa. Superior Ct. 286; Stone v. Carter, 48 Pa. Superior Ct. 236.

In the present case the purchaser would be exposed to litigation by all of the children and minor heirs of Mary J. McCloskey: Srolovitz v. Margulis, 35 Pa. Superior Ct. 252; Swayne v. Lyon, 67 Pa. 436; Kostenbader v. Spotts, 80 Pa. 430.

OPINION BY PORTER, J., February 28, 1920:

The appellant brought this action to recover the unpaid balance of purchase money alleged to be due upon a contract for the sale of certain real estate, averring that he, as administrator c. t. a. of Mary Jane McCloskey, deceased, had entered into a contract for the sale of said real estate to the defendant and that the latter, after having paid part of the purchase money, had refused to pay the balance and declined to complete the contract. The defendant, in his answer, averred that the written contract provided that the title to the land to be conveyed was to be "good and marketable and free from encumbrances" and, also, that "this sale is subject to the approval of the heirs of the late Mary Jane McCloskey, deceased; and a contract to cover this is to be prepared

and executed at once." He averred that the title tendered was not good and marketable and, further, that the heirs of Mary Jane McCloskey, deceased, had not executed the contract required by the written agreement. He set up a counterclaim averring the right to recover the amount of the cash payment which he had made. The parties agreed that the case should be tried before one of the judges of the court below without the intervention of a jury. The learned judge who tried the cause found that the title which the plaintiff tendered was not marketable and that the heirs of Mary Jane McCloskey, deceased, had not executed such a contract as was required by the terms of the written agreement and entered judgment in favor of the defendant and against the plaintiff for the amount of the cash payment which had been made. The plaintiff appeals from that judgment.

There is no dispute as to the material facts of this case. Mary Jane McCloskey had died in August, 1904. Her will designated as the executors thereof her sons Frank K. and Louis J. McCloskey, both of whom were living at the time of her death. This will was not admitted to probate until May 6, 1913; both of the sons named as executors had in the meantime died and letters of administration cum testamento annexo were issued to this plaintiff on that day. The will gave to the executors therein named power to sell and convey real estate freed and discharged from all trusts therein created. It may be conceded, as a general rule, that when a will gives to an executor a power to sell real estate, that power may be exercised by an administrator cum testamento annexo who succeeds to the trust: Potts v. Breneman, 182 Pa. 295; Tarrance v. Reuther, 185 Pa. 279. This does not, however, mean that, when the power of sale is without limit as to time, it may be executed by an administrator under any and all conditions and at any time however remote: Wilkinson v. Buist, 124 Pa. 253; Mitchell v. Railway Co., 165 Pa. 645; Schenck v. Clyde, 53 Pa. Superior Ct. 652. Mary Jane McCloskey had been dead

almost nine years before her will was admitted to probate, both the executors therein named had died in the meantime. The will gave to the executors a naked power to sell, but contained no express mandate requiring the exercise of that power, nor does it appear upon the face of the will that the exercise of that power was necessary to carry out the intention of the testator. The provisions of the will did not of themselves work a conversion of the real estate into personalty. These may have been the considerations which induced this defendant to require that the contract into which he entered should contain a covenant that the contract was "subject to the approval of the heirs of Mary Jane McCloskey, deceased, and a contract to cover this is to be prepared and executed at once." Whatever may have been the inducement for the inclusion of that covenant, the covenant is a part of the contract and the defendant is entitled to the protection thereof. The covenant was not merely that the sale should be subject to the approval of the heirs; it went further and required that "a contract to cover this is to be prepared and executed at once." These parties were contracting for a sale of real estate and it seems very clear that this covenant must be construed to mean that the contract into which the heirs were required to enter must be such as to authorize a conveyance of their interest in the real estate. The plaintiff never made any attempt to have such a contract executed by the heirs, all that he did was to have some of the heirs sign an informal approval of the proposed sale, while as to a majority of the heirs the approval was simply that of certain attorneys representing them, without any evidence of proper authority to so act. The implied authority of an attorney-at-law in this State is very broad as to those things which arise in the usual course of litigation and pertain to the conduct of an action, but he is without authority to compromise an action or to accept land instead of money, or money instead of land, in the satisfaction of a judgment; he has no implied authority to

authorize a sale of his client's land: Gray v. Howell, 205 Pa. 211. Two of the heirs were married women, whose husbands did not join them in any agreement to sell, nor did they take any part in even an informal approval of the sale. Six of the heirs were minors and as to them there was presented a simple informal certificate of the approval of the sale by their respective guardians. "A guardian cannot by his own unauthorized act destroy the inheritance in the land of his ward; the court may not authorize him to do so except in the statutory way for such reasons as the statute allows": Sayers v. Pollock, 219 Pa. 274; Metzger v. Trust & Safe Deposit Co., 220 Pa. 535. If these minors had an interest in this land, as land, the only way in which the guardians had any authority to divest that interest was by a proper proceeding in the orphans' court. We are not called upon to decide whether these minors had any interest in the land; the contract did not require this defendant to take any chances upon that point. He was entitled to have a properly executed contract, approved by the orphans' court, which would assure the conveyance of any title which the minors might have. This contract the plaintiff failed to procure and the defendant had a right to the return of the cash payment which he had made. The judgment of the court below might properly be affirmed upon this ground alone.

When the defendant came to have the title examined he was confronted by the record of a bill in equity which had been filed in the court of common pleas (before the letters of administration had issued), by this plaintiff, in his right as a child of Mary Jane McCloskey, deceased, in which one of his brothers joined, as plaintiff, and all the other heirs of Mary Jane McCloskey, deceased, were named as defendants, which bill was properly indexed as an ejectment proceeding. The bill averred that one John McCloskey, who died in 1856, had by his will bequeathed one-fourth of his estate to his executors in trust for Mary Jane McCloskey, wife of James McCloskey, Jr.,

during the term of her natural life and after her death the same was to be equally divided among her children share and share alike; that upon the adjudication of the account of said executors, by the orphans' court, the sum of $6,979.07 was awarded to James McCloskey, Jr., to be held in trust by him under the terms of the will of John McCloskey and to pay the income therefrom to Mary Jane McCloskey during the term of her natural life, and after her decease said sum to be equally divided among her children share and share alike; that the said trustee, James McCloskey, Jr., permitted his wife, Mary Jane McCloskey, who had a life interest in the fund to invest the same in the premises known as 4032 Chestnut street, the identical property here involved, the said Mary Jane McCloskey taking title thereto in her own name, she knowing that she had only a life interest in the money which she was paying for the property, and that her children were entitled to the principal thereof in equal shares on her death, that Mary Jane McCloskey held title to and occupied the said premises up until the time of her death, in 1904, and that James McCloskey, Jr., her husband, and the trustee of the fund, had died in 1898. The bill further averred that no part of the trust fund had ever been paid or distributed to the children of Mary Jane McCloskey, who are entitled to the principal thereof and that Mary Jane McCloskey left surviving at her death seven children, two of whom have since died, leaving minor children. The bill prayed the court to decree that Mary Jane McCloskey in her lifetime held the said premises in trust, the income whereof she was entitled to during the term of her natural life, and in trust for her children upon her death and that title thereto upon her death vested in her children, and, further, prayed that partition be made according to law. The respondents had filed no answer to the bill, but the proceeding was open and pending and constituted notice to this defendant. The proceeding was subsequently discontinued, but upon the hearing of the present case in the court below

it was made to clearly appear that all the averments of fact contained in that bill were true.  James McCloskey, Jr., the trustee under the will of John McCloskey, and Mary Jane McCloskey, the life tenant, had invested the trust fund, the principal of which was the property of her children, in this land, the title to which was taken in the name of Mary Jane McCloskey, who had continued to occupy the house during the term of her natural life. It also was an undisputed fact that the children of Mary Jane McCloskey, or some of them, had been in possession of the property ever since the death of Mary Jane McCloskey.  We have then a case in which the trustee of a fund and the life tenant have invested the trust fund in land and the life tenant has continued in possession of the land until her death and immediately upon her death those entitled to the principal of the trust fund have entered and taken possession of the land.  A purchase of land with trust money, in whole or in part, gives the owner of the money a corresponding ownership of the land: Kisler v. Kisler, 2 Watts 324; Slaymaker v. St. John, 5 Watts 27.  It is true that the title to this land was taken in the name of Mary Jane McCloskey in 1888 and she continued to hold it until 1904.  There may be a question whether the right of the children, who are entitled to the remainder in the fund, to claim this land is barred by the provisions of the 6th section of the Act of April 22, 1856, P. L. 532.  If Mary Jane McCloskey held title subject to a resulting trust the trust existed from the day she took title, but it must be borne in mind that the right of the children to enter did not accrue until Mary Jane McCloskey died.  The children entered and had been in possession ever since the death of the life tenant, in whom was the legal title.  Every possession, where there is title, is supposed to be in subordination to that title.  The possession of one of several tenants in common is, as a general rule, the possession of all.  If the children asserting their right to enter under the resulting trust took possession of the land within five years

after their right of entry accrued, it cannot with certainty be said that they are not in position to maintain their title and right of possession against any one who may claim under the will of Mary Jane McCloskey: Clark v. Trindle, 52 Pa. 492; Way v. Hooton, 156 Pa. 8. Such a state of affairs is certainly liable to lead to litigation. It has already led to litigation, instituted by this plaintiff and his brother and although that proceeding has been discontinued we can see nothing standing in the way of the other children, or the minor children of the sons who have died since their mother, beginning a new proceeding. This defendant had notice of all the facts casting doubt upon the title which it was proposed he should take and would have had to take the risks assumed by one who accepts a title with knowledge of defects. A title is not marketable which exposes the party holding it to litigation. If a vendor has covenanted to convey a marketable title, and when the time arrives for carrying out his agreement he is unable to do so, the vendee has a right to rescind and recover back the portion of the money he has paid. The question of title to the land here involved cannot be definitely settled in this action, as against the interests of the minor grandchildren of Mary Jane McCloskey. The learned judge of the court below properly held that the title tendered the defendant was not marketable and that he was entitled to recover the cash payment which he had made: Reighard's Est., 192 Pa. 108; Christ Reformed Church v. Clark, 47 Pa. Superior Ct. 286; Stone v. Carter, 48 Pa. Superior Ct. 236.

The judgment is affirmed.